**In re BLISS et al.**

No. 20460.  Opinion Filed Dec. 10, 1929.

Rehearing Denied Feb. 25, 1930.

Adelbert Brown and Gordon Stater, for protestants.

Byron Kirkpatrick, Co. Atty., Hugh Webster, Asst. Co. Atty., Ed. O. Cassidy, M. C. Spradling, City Atty., and Allen, Underwood & Canterbury, for protestee.

ANDREWS, J.  Charles W. Bliss and others protested certain tax levies made by the excise board of Tulsa county for the fiscal year beginning July 1, 1928, as illegal and excessive.  An appeal was taken by the protestee from the judgment directing the cancellation of portions of the levy, and by the protestant from the judgment sustaining portions of the levy.  We will discuss the various grounds of protest separately.

The protestant presents, as the first proposition, the levy of 1.3 mills of the Tulsa county general fund, consisting of two items. The protest as to .16 mills on the first item was dismissed, leaving for consideration 1.14 mills which is based upon a reserve for appropriation. This item appears on the financial statement and estimate as follows:

"Reserves: Unexpended appropriation, $205,569.17."

The Courts of Tax Review denied this protest. This court in cause No. 20142, Coggeshall & Company v. Smiley, this day decided, 142 Okla. 8, 285 Pac. 48, held:

"An excise board is without authority of law to permit the deduction from the funds on hand at the close of the fiscal year of an amount reserved 'for appropriation,' and a levy based on appropriation made after such deduction is to that extent excessive and void"

—and we apply the same rule here.

The Court of Tax Review erred in denying the protest on this proposition, and that judgment is reversed.

The second proposition presented by the protestant is a 1 mill Tulsa county general fund levy, and several grounds of illegality are alleged. The first was that the entire levy of 1 mill is void as in excess of the 4 mills limitation. That contention is waived in the briefs. The next contention is the illegality of the "reserve for appropriation" in the county highway fund, by reason of which the levy is void to the extent of .43 mills. We have herein determined that contention, and it is unnecessary to discuss it further. The Court of Tax Review erred in denying the protest on this contention, and that judgment is reversed.

The third contention involves an item of $99,146.97 appropriated for county highway purposes which was included in the financial statement and estimate, but which did not appear in the publication thereof. This identical question was presented and decided in cause No. 20363, In re Protest of Gypsy Oil Company, this day decided, 141 Okla. 291, 285 Pac. 67, and we here held that:

"The financial statement and estimate required by the provisions of sections 9697 and 9698, C. O. S. 1921. must be published as therein provided and an appropriation may be made for only those items for which estimates have been made and published."

The Court of Tax Review erred in denying the protest on this contention, and that judgment is reversed.

The third proposition presented by protestant involves .5 mills of the Tulsa county general fund for free fair purposes. This court in cause No. 20142, Coggeshall & Company v. Smiley, supra, held:

"A levy may be made for free fair purposes under the provisions of chapter 159, S. L. 1925, in addition to the 4 mills limitation for current expenses."

There was no error in denying the protest on this ground, and the judgment of the Court of Tax Review is affirmed.

The fourth proposition presented by protestant is a levy of 1.08 mills for the Tulsa county separate school fund. In the briefs 1 mill is waived and .08 mills is attacked, and the ground of the attack is that the income to the separate school fund from other sources was in excess of the amount allowed in making the appropriation. The Court of Tax Review denied this contention on the theory that the estimated income could not exceed the actual collections from such sources for the previous fiscal year. There was no error in that holding, and that judgment is affirmed.

The fifth proposition of the protestant involves a levy of .2 mills of the Tulsa county sinking fund. This protest was dismissed on the trial.

The sixth proposition of protestant involves a levy of 10.25 mills of school district No. 22, and there are two contentions thereunder.

The first contention is that the levy of 10 mills of the general fund of the school district is void for the reason that the purported election at which this levy was attempted to be authorized was held prior to the preparation of the budget and the publication thereof and the failure to comply with other statutory requirements, and the second contention is that the levy of .241 mills was void by reason of a reserve for unexpended appropriations.

The second contention is determined by our ruling on the first proposition in this case. The Court of Tax Review was in error in denying the protest on this contention, and that judgment is reversed.

The first contention will be settled by determining whether or not section 10448, C. O. S. 1921, is in conflict with section 9707, C. O. S. 1921. We find no conflict therein. The procedure for making the estimate and holding the election is provided and governed by section 10448, Id. It is here contended that notice of the election was not posted.

The protestee contends that that question was not raised in the Court of Tax Review and cannot be raised in this court for the first time. An examination of the record in this case discloses nothing to show that the notice was not posted.

We find nothing in this record to warrant a reversal of the judgment of the Court of Tax Review on this contention, and that judgment is affirmed.

The seventh proposition presented by the protestant is the levy of 1.13 mills for school district No. 22 sinking fund, and is presented on three contentions.

The first contention involves .11 mills and is based on alleged excessive accruals on bond issues. The amount required to be raised was computed on the basis of 1/19 of the 20-year issues and 1/24 of the 25-year issues, and this computation was sustained by the Court of Tax Review. This court determined this contention in cause No. 20142, Coggeshall & Co. v. Smiley, supra, wherein we said:

"The number of levies for sinking fund purposes depends upon the date of issuance and maturity of the bonds and is equal to the number of fiscal years intervening between the date of the issuance and the date of maturity of the bonds in which a tax levy may be made and the tax levy collected."

This court will not undertake a computation to determine what portion, if any, of the accruals were incorrectly computed, but we will reverse this judgment and remand it to the Court of Tax Review for a computation in accordance with the rule hereinabove stated. The judgment is reversed.

The second and third contentions under the seventh proposition were either dismissed or determined favorably to the protestant.

The eighth proposition presented by the protestant involves a levy of 9.75 mills of the Tulsa city general fund. The first contention thereunder was determined adversely to protestant and is not presented in protestant's brief. The second contention involves .18 mills, which is divided into two items, the first of which pertains to cash on hand, omitted in the general fund, which the Court of Tax Review determined adversely to protestant and which is not presented in their brief. The second involves a reserve for appropriation to the extent of .11 mills. We have determined that contention in our decision on the first proposition herein. and under that rule the judgment of the Court of Tax Review. as to this item, is reversed. The third contention involves the library,

cemetery, and park funds. This contention is settled by the rule announced in cause No. 20142, Coggeshall & Co. v. Smiley, supra, wherein we said:

"The levy for cemetery fund, under the provisions of chapter 8, S. L. 1927, the levy for library fund, under the provisions of chapter 7, S. L. 1927, the levy for park fund under the provisions of chapter 69, S. L. 1927, may be in excess of the levy for current expenses."

The judgment of the Court of Tax Review on this contention is affirmed.

The ninth proposition presented by the protestant involves a levy of 10.75 mills of the Tulsa city sinking fund. The first contention thereunder is not presented in the briefs.

The second contention involves a premium on bonds received during the preceding fiscal year. We determined that contention in cause No. 19697, Aaronson v. Smiley, this day decided, 142 Okla. 29, 285 Pac. 59, wherein we held:

"Accrued interest on bonds and the net premium derived from the sale of bonds should be credited to and held in the sinking fund for the purpose of reducing the tax levy necessary to pay the interest thereon and create a sinking fund for the retirement thereof."

It is here contended that, since the amount of this premium was placed in the general fund and not in the sinking fund, it cannot be considered as a part of the sinking fund, and that the rule announced in Dickinson v. Blackwood, 76 Okla. 175, 184 Pac. 582, does not apply, for the reason that there the money was on hand. We do not think that the county treasurer can change the law by placing in the general fund money which belongs in the sinking fund. There is only one question in this contention and that is whether or not the money was on hand. The record shows that it was on hand. and whether it had been placed in the sinking fund or general fund, it must be considered as being in the sinking fund. The actual handling of these funds is a matter of bookkeeping and the county treasurer is bound to handle them as the law provides.

The judgment of the Court of Tax Review on this contention is reversed.

The third contention under this proposition involves the application of a balance of funds received from a bond issue after the purpose for which the money was borrowed has been served.

Section 16, art. 10, of the Constitution provides:

"All laws authorizing the borrowing of money by and on behalf of the state, county, or other political subdivisions of the state shall specify the purpose for which the money is to be used, and the money so borrowed shall be used for no other purpose" —and under that provision, money borrowed may be used only for the purpose for which it was borrowed. That provision is a restriction on the use of funds derived from a bond issue other than for the purpose for which the bonds were issued. Where the purpose for which the bonds were issued has been served and there is a balance on hand derived from a sale of the bonds so issued, it can be used for no other purpose and must be placed in the sinking fund for the purpose of retiring, pro tanto, the bonds so issued in excess of the amount needed for the purpose for which they were issued.

The judgment of the Court of Tax Review on this contention is reversed.

The fourth contention under this proposition involves two items: First, the profits derived from the operation of a water works; and second, the expenditure of funds derived from the operation of a water works in making new installations and extensions. Demurrers were sustained to the protest on each of these items and no evidence was offered or received.

On the first item we find an allegation that there was actual cash on hand in the sinking fund in the sum of $53,653.50 over and above the outstanding warrants and legal charges against the fund. The demurrer admitted the truth of that allegation. That amount was not taken into account as a balance or surplus of assets on hand as of June 30, 1928, but was totally ignored. The taxpayers did not receive credit either in the sinking fund or the current expense fund, and the same was not considered in any manner tending to affect or reduce the tax levies for the fiscal year involved herein. That presents a different situation from that presented in any of the water works cases that have been before this court. It is here contended by the protestee that it is not necessary to consider income from a water works plant in making tax levies, and that under section 6, art. 18, of the Constitution,

"every municipal corporation within this state shall have the right to engage in any business or enterprise which may be engaged in by a person, firm, or corporation by virtue of a franchise from said corporation."

Under that provision a municipally owned water plant may be operated as a private enterprise under legislative regulations. In our opinion, this may be done, under existing legislation, through a fund separate and apart from the current expense fund. No matter how it is operated, the money collected from the water charges is required to be accounted for under the provisions of section 30, art. 10, of the Constitution, which reads as follows:

"The Legislature shall require all money collected by taxation, or by fees, fines, and public charges of every kind, to be accounted for by a system of accounting that shall be uniform for each class of accounts, state and local, which shall be prescribed and audited by authority of state"

—and the method of accounting is provided by section 9697, C. O. S. 1921, which reads as follows:

"* * * And all employees charged with the management or control, of any department or institution or either thereof, shall on or before the first Monday of July each year make and file with the board or commission charged with the duties of reporting to the excise board, a report in writing showing, by classes, the earnings and cost of maintaining their respective offices or departments for the previous fiscal year, together with an itemized statement and estimate of the probable needs thereof for the current or ensuing fiscal year."

When the employees charged with the management or control of the water department shall have made their report to the governing body of the municipality, showing the earnings and cost of maintaining their department, and an itemized statement and estimate of the probable needs for the ensuing fiscal year, the same may be included in the financial statement and estimate for current expense and so published, or it may be shown as a separate fund and so published. There must, however, be such a showing as will disclose to the citizens and taxpayers "* * * the probable income that will be received from all sources other than ad valorem taxes. * * *" Section 9695, C. O. S. 1921.

In determining the amount to be raised by taxation the excise board is required by section 9699, C. O. S. 1921, which reads as follows:

"* * * They shall thereupon make the levies therefor, after deducting from the total so computed the amount of any surplus balance of revenue or levy, ascertained to be on hand from the previous fiscal year or years, together with the amount of the probable income of each from all sources other than ad valorem taxation"

—to deduct the amount of any surplus balance of revenue or levy ascertained to be on hand. The question then presents itself whether this surplus balance should be considered in the sinking fund, current expense fund, or the water fund. Protestant's attorneys have contended in a number of cases before this court that the surplus is required to be placed in the sinking fund. We have held contrary to that contention (Perrine v. Bonaparte, 140 Okla. 165, 282 Pac. 332, and the basis of that holding was that neither the Constitution nor the statutes require the placing of this surplus in the sinking fund. In the absence of such requirement this court was without authority to direct its inclusion in the sinking fund.

It is clear to us that a net balance or surplus derived from the operation of a municipally owned and operated water plant must be accounted for by the municipal officers in the published financial statement and estimate, and that the excise board, in making the appropriations, shall consider the net balance or surplus therefrom in making the levies. It is clear that the inclusion of the water plant operations in the current expense fund will give that fund the benefit of that surplus. If the municipal officers elect to handle the water plant separate and apart from the current expense fund and that plant produces a net surplus or balance, the taxpayers of the municipality are entitled to have that net surplus or balance considered in making the levy for current expense or for the sinking fund to the end that the necessary tax levies may be reduced. We have no sympathy with the contention here made that a municipality may carry a net balance in any department and refuse to apply that net balance to the reduction of the necessary tax levies. The operation of such a plan could result in the accumulation of an immense amount of money belonging to the taxpayers without the reduction of the tax upon their property. Such a plan is contrary to the principles of our government. We find nothing in the authorities cited by protestee contrary to the rule herein announced.

Protestee says:

"Thus it is seen that when a municipal corporation embarks in the business of operating a public utility owned exclusively by such municipality, it then and there places itself beyond the supervision of the county excise board and rightfully so, as a county excise board is only concerned with the current expenses of a municipality, only necessary for it in the exercise of its governmental and legislative functions."

We agree with this contention, with two exceptions: First, the statement can be true only where the operation of the public utility is kept separate and apart from the current expense of the municipality and where the operation thereof is without the aid of ad valorem taxation; and second, the net surplus or balance derived therefrom must be applied as hereinbefore stated.

The operation by a municipality of a municipally owned water plant, under the provisions of the Constitution, may be as a private enterprise, not controlled by the general taxation statutes, or it may be as a part of the current expense of the municipality, controlled by the general taxation statutes. In either event, the municipal officers are required to make and publish an annual statement of the financial condition of the water plant, which statement may be included in the current expense statement or shown in a statement separate therefrom. In any event, the surplus or balance on hand at the end of the fiscal year must be considered as a resource in determining the amount of money to be raised by ad valorem taxation.

Under the allegations of the petition, admitted by the demurrer to be true, there was a net surplus or balance from the operation of the water plant which was not considered in making the levies for the year.

There was error in the judgment of the Court of Tax Review on this contention, and the same is reversed.

In the second item of this contention we find an allegation that there were profits derived from the operation of the water plant which were used in the making of capital expenditures in operating the water plant in violation of the law and which should have been made from the proceeds of a bond issue for that purpose so as to divide the cost thereof among the taxpayers over a period of years.

The protestee contends that these extensions and other capital improvements were alleged to have been made and that the money used in payment therefor could not be considered as any part of a balance on hand. Since the money had been expended, it could not constitute any part of a balance on hand.

Where the water plant is operated separate and apart from the current expense fund of the municipality and without the aid of ad valorem taxation, expenditures for operating expenses, replacements, and exten-

sions may be made from the income from the plant for the fiscal year without an appropriation having been made therefor.

There was no error in the Court of Tax Review sustaining a demurrer on this contention, and that judgment is affirmed.

The first proposition presented by the protestee is a levy of .101 mills for county highways. The first item is based on a disputed question of fact on which the Court of Tax Review held that the assets were understated to the amount of $1,726.97. The protestant contends that this is a law action. We are of the opinion that a proceeding before the Court of Tax Review is neither a law action nor a suit in equity, but a special proceeding authorized by the people to settle controversies involving the legality of tax levies. We think, however, that it partakes more of the nature of an equitable proceeding, and in applying a rule for a review of evidence therein we hold that a judgment of the Court of Tax Review will not be reversed unless it is clearly against the weight of the evidence.

The evidence shows that there was deducted from the balance on hand an amount for "* * * unpaid 1925-26 and back years warrants" and "* * * unpaid 1926-27 warrants." That contention was determined by this court in cause No. 20142, Coggeshall & Company v. Smiley, supra, contrary to that of the protestee, and the same rule is applied here.

There was no error on the part of the Court of Tax Review on this contention, and the judgment of that court is affirmed.

The second contention on this proposition involves a state of facts as follows: The general fund levy for the fiscal year beginning July 1, 1927, was 4 mills, and the county highway levy for that year was 1 mill. The financial statement and estimate for the fiscal year beginning July 1, 1928, shows a net balance of $64,065.92 of 1927 taxes in process of collection as of June 30, 1928. It is contended that the net balance in the county highway fund should be 1/5 of that amount, and the Court of Tax Review so held. We are unable to agree with protestee's contention as shown in the briefs in the form of a computation. We find no error in the judgment of the Court of Tax Review on this contention, and it is affirmed.

The second proposition presented by the protestee is the levy of .088 mills for a free fair fund. The protestee states that a deduction is made from the free fair fund, "* * * for the reason that during the fiscal year 1927-28, the general fund paid warrants for free fair purposes, in excess of the taxes collected for that purpose, and as a consequence the free fair fund was indebted to the general fund in that amount. It is included in the assets of the general fund, as will be shown hereinafter, and is a liability against the free fair."

There was considerable conflicting testimony in regard to this item. We are unable to say that the judgment of the Court of Tax Review is clearly against the weight of the evidence, and for that reason the judgment of the Court of Tax Review on this proposition is affirmed.

The third proposition presented by the protestee involves a levy of .009 mills for the school district No. 22 general fund which the Court of Tax Review held illegal for the reason that warrants outstanding for years other than the immediate preceding fiscal years were set up as a liability. We discussed that contention in cause No. 20142, Coggeshall & Company v. Smiley, supra, and held:

"The excise board is without authority of law to make an appropriation for the purpose of paying warrants outstanding for a previous fiscal year, and a tax levy based thereon is to that extent excessive and void."

We apply the same rule here. We have not computed this amount to determine whether it should be .009 mills or .008 mills as contended by protestee. If there is an error in the computation, it should be corrected. The judgment of the Court of Tax Review on this proposition is affirmed.

The fourth proposition presented by the protestee involves a levy of .79 mills for school district No. 22 sinking fund. The Court of Tax Review held that the accruals on 25-year bonds should be on a basis of an annual levy of 1/24.

We have herein determined that contention, and we apply the same rule. We will not compute the accrual on the bonds shown by the record, but will remand the case to the Court of Tax Review for a computation under the rule herein announced. The judgment of the Court of Tax Review on this contention is reversed.

The fifth proposition presented by the protestee is a levy of 2.46 mills of the Tulsa city general fund. The Court of Tax Review held that the election for the additional levy was not held in the manner provided by law. We determined that contention in

cause No. 19698, Grubb v. Smiley, 142 Okla. 19, 285 Pac. 38, supra, wherein we said:

"Where a city seeks a levy for current expenses in excess of 6 mills, an election may be held under the provisions of chapter 61, S. L. Sp. Sess. 1923-24, where the conditions provided by that act exist, and where those conditions do not exist, such an election may be held only under the provisions of sections 9707-9712, inclusive, C. O. S. 1921."

The judgment of the Court of Tax Review on this proposition is affirmed.

The sixth proposition presented by the protestee involves the Tulsa city sinking fund to the extent of 3.21 mills, and the basis thereof is that a liability was set up against the sinking fund balance for the payment of interest coupons and commissions due the fiscal agency on bonds accruing during the fiscal year when there were no matured and unpaid interest coupons and no commissions due the fiscal agency during that year. Protestee contends that this reserve was necessary for the purpose of providing a fund to provide for maturities during the first half of the next fiscal year. That contention was determined by this court in cause No. 20142, Coggeshall & Company v. Smiley, supra, wherein we said: ..

"An excise board is without authority of law to make an appropriation for the payment of interest on outstanding bonded indebtedness which matures subsequent to the fiscal year for which the appropriation is made."

We apply the same rule here. The judgment of the Court of Tax Review on that proposition is affirmed.

This cause is remanded to the Court of Tax Review, with directions to take such action necessary to determine the rights of the parties as is consistent herewith.

MASON, C. J., LESTER, V. C. J., and HUNT, CLARK, RILEY, HEFNER, CULLISON, and SWINDALL, JJ., concur.