## IRON PRODUCTS INV. CO. v. CITY OF PICHER, OKL.

No. 1351.

Circuit Court of Appeals, Tenth Circuit.

April 14, 1936.

---

A. M. Armstrong, of Picher, Okl., for appellant.

M. A. Dodd, of Picher, Okl., for appellee.

Before PHILLIPS and McDERMOTT, Circuit Judges, and KENNEDY, District Judge.

PHILLIPS, Circuit Judge.

On January 17, 1929, a contract was entered into between the United Iron Works, Inc., and the City of Picher, Oklahoma, the material provisions of which are set out in the subjoined note.[1]

---

[1] "Proposal and Agreement.

"(Pump)

"United Iron Works, Inc. (hereinafter referred to as the lessor), * * * proposes: To City of Picher, * * * (hereinafter referred to as lessee),

"To lease unto lessee two Number 6 L. C. Pomona Turbine Belted Type Deep Well Pump and Equipment, * * * for the period of twelve months after date when said pumping equipment shall be installed and ready for operation, at the monthly rental of Three Hundred Seventy Dollars ($370.00) payable at the end of each month. * * *

"The Lessee agrees to take good care of said pump and equipment and to operate the same in a careful manner and in accordance with approved practice, and at the expiration of the term of this lease and at Lessee's expense to cause the said pump and equipment to be removed from the well and placed upon the cars at Picher, State of Oklahoma, for shipment duly consigned to the Lessor at its factory at Springfield, Missouri, the said pumping equipment to be in as good condition as when installed, reasonable wear and tear only excepted, and to notify Lessor promptly that said shipment has been made. The Lessee shall be liable to the Lessor for all damages that may be caused to said pumping equipment while in transit. * * *

"The Lessee agrees to pay said rentals promptly when due, and the failure of the Lessee to pay said rentals within ten days after the due date thereof shall terminate this lease without notice, and the Lessor shall be at liberty to take and remove said pump and equipment from the well and the premises of the Lessee, the Lessee hereby waiving all claims for damages that shall be caused to the property and premises of the Lessee by the taking and removing the said pump and equipment in workmanlike manner, and the Lessee agrees to pay unto the Lessor full costs of taking and removing the said pump and equipment and the loading the same upon the cars for shipment to Lessor. * * *

"For and in consideration of the sum of Fifteen Hundred Dollars ($1500) the City of Picher, Oklahoma, agrees to deliver to the United Iron Works, Inc., the following property, to-wit: One (1) Ingersoll-Rand type ten air compressor, one one-hundred fifty h.p. electric motor, and one leather belt, belonging [—] said compressor and motor, now located at the Pumping Plant at the City of Picher, Oklahoma.

"It is agreed by the City of Picher, Oklahoma, that the above mentioned Fifteen Hundred Dollars is to be applied as first payment on certain equipment purchased from the United Iron Works, Inc., by the City of Picher, Oklahoma, hereinafter described and made a part of this contract. The above mentioned air-compressor and motor and belting are to be delivered f.o.b. present location, in good condition to the United Iron Works, Inc., upon completion of installation of the machinery hereinafter described.

"The Lessor agrees to install said pump and equipment and where Lessor is to install the same, the Lessee agrees to pay to Lessor all freight and installation charges in cash upon completion thereof. It is agreed that the Lessor's charge for freight and installation shall be $1500.00 payable on completion of installation.

"Notwithstanding anything herein to the contrary, the Lessee may at any time during the term of this lease, if not then

The contract was assigned to The Iron Products Investment Company, plaintiff below.

It alleged in its amended petition that in drafting the contract a mistake was made, in that a lease form was used, when, in fact, it was the intent of the parties that the contract should operate as one of sale.

It prayed that the instrument be reformed to express the true intent of the parties and for judgment of $4,587.70, with interest, and if the court should, for any reason, find the contract unenforceable, then that it award a return of the property installed, reasonable compensation for its use and damages for depreciation.

The City, in its answer, admitted the execution of the contract, the installation of the machinery and the use thereof, but set up that the contract was void in that it was made in violation of sections 26 and 27, article 10 of the Oklahoma Constitution.

The original petition was filed as an action at law and sought to recover $19,610.00 as rentals for the machinery. A jury was waived and the cause was tried to the court. After hearing the evidence the court determined the transaction covered by such contract was not a lease of such machinery but a sale thereof and permitted plaintiff to file the amended complaint asking for a reformation of the contract. The cause, at plaintiff's request, was then transferred to the equity side of the docket. The court thereupon found the City was without power to incur the debt created by the contract under the constitution and laws of Oklahoma and entered a decree dismissing the amended complaint.

From such decree, plaintiff has appealed.

The evidence disclosed these facts. The City Council, on January 7, 1929, authorized the water committee of the City to dispose of certain old equipment for not less than $1000 and apply the proceeds as a down payment on the new machinery described in the contract and authorized the mayor to buy such machinery. No election was held on the question of incurring the indebtedness created by the contract. The waterworks department of the City collected $266,966.03 from 1921 to 1931 and warrants were issued during such period totalling $224,792.55 leaving a surplus of $42,173.48. The City was unable to pay its ordinary governmental expenses without the aid of the money received from the water department.

A memorandum statement was submitted by the City as follows:

Total Assessed Valuation of 1928

| | |
|---|---:|
| Personal property | $ 924,380.00 |
| Real property | 217,770.00 |
| Pub. Service Corps. | 202,221.00 |
| Total | $1,344,371.00 |
| | .05 |
| | $ 67,218.55 |

Bonds Outstanding

| | |
|---|---:|
| Water Works | $ 107,000.00 |
| Sanitary Sewer | 48,000.00 |
| | $ 155,000.00 |
| Unpaid judgments | 16,537.50 |
| | $ 171,537.50 |
| | 67,218.55 |
| | $ 104,318.95 |

The water bonds were authorized by a vote of the tax paying voters of the City.

The material provisions of sections 26 and 27, supra, are set out in note 2.[2]

---

in default, elect to purchase the said pump and equipment for the sum of Five Thousand Nine Hundred Forty Dollars, to be paid at the time notice of such election is given in writing to the Lessor; provided, in event of election to purchase said pump and equipment on the part of the Lessee, it shall be entitled to deduct from the purchase price hereof as herein stated, an amount equal to the sum of all rentals and freight and installation charges paid hereunder. * * *

"Lessor and Lessee agree that there are no oral agreements and that this contract expresses all the agreements between the parties hereto. * * *

"United Iron Works, Inc., (Lessor)
"By C. C. Cook.
"City of Picher, Okla., (Lessee)
"By H. L. Henderson, Mayor.
"(Lessee's Corporate Seal)
"Attest: Henry Austin, Clerk.
"Approved .........., 19...
"United Iron Works, Inc.,
"By J. H. Camper, Vice-President."
[2] Sections 26 and 27, article 10 of the Oklahoma Constitution read as follows:
"Sec. 26. No county, city, town, township, school district, or other political

■ Section 26, supra, is not a limitation on the power of a City to become indebted in any manner or for any purpose, during a single year, to an amount that does not exceed the income 'and revenue provided for such year; but it is a limitation upon. its power to incur debts for any purpose over and above the income and revenue provided in each year without the assent of three-fifths of the voters thereof (Faught v. City of Sapulpa, 145 Okl. 164, 292 P. 15; City of Pawhuska v. Pawhuska Oil & Gas Co., 118 Okl. 201, 248 P. 336; State v. Short, 113 Okl. 187, 240 P. 700); and an indebtedness when so assented to, must not with existing indebtedness, exceed the 5% limitation.

Section 27, art. 10, supra, is a special grant of power to incorporated cities and towns, to incur debts for public utilities to be owned exclusively by such cities and towns, in excess of the limitations prescribed in section 26, supra. State v. Short, supra; City of Pawhuska v. Pawhuska Oil & Gas Co., supra; Faught v. City of Sapulpa, supra.

■ Debts incurred under such special grant are excluded from any computation made to determine whether the debt limit prescribed by section 26 has been exceeded. State v. Short, supra; City of Pawhuska v. Pawhuska Oil & Gas Co., supra; Faught v. City of Sapulpa, supra.

No election was held respecting the incurring of the indebtedness under the contract. It was not submitted to the tax paying voters of the City under section 27, nor to the voters of the City under section 26,

Plaintiff does not seriously contend that the indebtedness under the contract was within the income and revenue of the City provided for the year 1929, but asserts the contract did not create a debt within the meaning of section 26.

Plaintiff's theory is that the debt created by the contract is valid for the reason that the City, acting in a proprietary capacity as the owner of its waterworks, is not limited in its expenditures for waterworks repairs or replacements by any debt limitation. It also relies on the Special Fund Doctrine.

■■ We cannot subscribe to that theory. The waterworks was acquired by the City by means of capital raised by the sale of bonds. Such bonds are general obligations of the City. See section 6063, Okla.Stat. 1931. The interest and amount required to be set aside annually for the retirement of such bonds are recurring obligations of the City and must be provided for out of the annual income and revenue of the City. Likewise, the revenue from the waterworks is revenue to the City and must be taken into consideration in computing its annual income and revenue. In re Bliss, 142 Okl. 1, 285 P. 73, 78. Debts created

---

corporation, or subdivision of the State, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose, nor in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount including existing indebtedness, in the aggregate exceeding five per centum of the valuation of the taxable property therein, to be ascertained from the last assessment for State and county purposes previous to the incurring of such indebtedness: Provided, That any county, city, town, township, school district, or other political corporation, or subdivision of the State, incurring any indebtedness, requiring the assent of the voters as aforesaid, shall, before or at the time of doing so, provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal

thereof within twenty-five years from the time of contracting the same.

"Sec. 27. Any incorporated city or town in this State may, by a majority of the qualified property tax paying voters of such city or town, voting at an election to be held for that purpose, be allowed to become indebted in a larger amount than that specified in section twenty-six, for the purpose of purchasing or constructing public utilities, or for repairing the same, to be owned exclusively by such city: Provided, That any such city or town incurring any such indebtedness requiring the assent of the voters as aforesaid, shall have the power to provide for, and, before or at the time of incurring such indebtedness, shall provide for the collection of an annual tax in addition to the other taxes provided for by this Constitution, sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within twenty-five years from the time of contracting the same."

by the City, whether for strictly government purposes or for waterworks purposes, if within the annual income and revenue provided by the City are valid, but if in excess of such annual income and revenue, they are void under the limitation provision of section 26, supra. See Zachary v. City of Wagoner, 146 Okl. 268, 292 P. 345. This conclusion is further strengthened by the fact that section 27, supra, provides a way in which an indebtedness in excess of the annual income and revenue of the City with the assent of the tax paying voters of the City, may be validly incurred for repairs or replacements of the waterworks system.

 Furthermore, the waterworks system was acquired through general obligation bonds which are a direct burden upon the taxpayers of the City. See Perrine v. Bonaparte, 140 Okl. 165, 282 P. 332, 334. Debts created in excess of the annual income and revenue of the City, although payable solely from revenue of the waterworks, would cast an incidental burden on the taxpayers of the City and would be within the limitation of section 26, supra. Fairbanks, Morse & Co. v. City of Wagoner (C.C.A.10) 81 F.(2d) 209, 219; City of Campbell v. Arkansas-Missouri P. Co. (C. C.A.8) 55 F.(2d) 560, 563 See, also, In re Bliss, supra.

In a great many jurisdictions, including Oklahoma (Baker v. Carter, 165 Okl. 116, 25 P.(2d) 747), a special fund doctrine has grown up to the effect that where a contract to purchase property provides for payment solely out of net earnings of the property purchased, a debt within the meaning of constitutional provisions such as sections 26 and 27, is not created. See Fairbanks, Morse & Co. v. City of Wagoner (C.C.A.10) 81 F.(2d) 209, 216, and cases there cited. This contract contains no such provision.

Whether the City could validly create a debt for repairs, replacements or extensions of the waterworks system to be paid for solely out of waterworks revenues (see In re Bliss, 142 Okl. 1, 285 P. 73, 78) we need not decide. The contract here was a general obligation of the City.

We conclude the contract is void.

The contract being void, plaintiffs are not entitled to recover the property or the value of its use.

In Board of Commissioners v. Western Bank & Office Supply Co., 122 Okl. 244, 254 P. 741, 746, the court said:

"The repeated decisions of this court had held such contracts void. There is no decision of this court on the law since statehood that even intimates that the property can be returned, and the statute on its face provides that their remedy is a suit against the officers entering into such an agreement. If it had brought such a suit and recovered judgment, we would not in the least be reluctant to affirm the same; but it has sued the municipality and not resorted to the remedy which the law gives it, and prayed for a return of the property, which could have no other effect except an indirect evasion by forcing a tax levy in a subsequent year to pay for this property, purchased in a previous year. To sanction this would be to strike down the plain intent and purpose of the provisions of the Constitution and the statutes above quoted.

"The judgment of the trial court is reversed, in so far as it granted judgment to the plaintiff for return of the property, with direction to dismiss plaintiff's petition."

Furthermore, neither plaintiff nor its predecessor, has tendered back what it received in part payment on the contract.

The judgment is affirmed.

