LAYNE-WESTERN CO. v. CITY OF DEPEW.

No. 26284.   June 30, 1936.

Cheatham & Smith, for plaintiff in error.

Wilkinson & Smith, for defendant in error.

PER CURIAM. The Layne-Western Company brought this action against the city of Depew for the sum of $2,481.01 as the price of a turbine pump which it sold to that city and installed in its waterworks system in the month of April, 1932. Plaintiff's petition alleged:

"That on or about said date the pumping machinery for said waterworks system and plant broke down and ceased to function, and that by reason thereof the said defendant was and would be unable to furnish its customers and patrons with water for domestic purposes, and was and would be unable to furnish water for fire protection to said city, by reason of which an emergency existed, and it became immediately necessary and imperative that said condition be remedied and that said water system and plant be repaired and certain machinery replaced so that the business of said defendant could be carried on and its contracts and duties to furnish water fulfilled.

"Plaintiff states that on or about said date the defendant, acting in its proprietary and business capacity, agreed to permit the plaintiff to install as a part of its waterworks system one deep turbine pump and motor for testing and examination, and that this plaintiff installed the same in the well aforesaid, and that the defendant, after July 1, 1932, accepted the same and agreed to pay for same, and has, ever since said date, been using the same in producing water from its said well."

A demurrer was sustained to this petition and judgment rendered against the plaintiff thereon, and it has appealed to this court. The sole question submitted on appeal is whether this petition states a cause of action. We shall refer to the parties as they appeared in the court below.

Plaintiff insists that, since the ownership of a waterworks system is on the proprietary or corporate side of the municipal powers, there is no constitutional limitation upon the amount of contractual indebtedness which is permitted to be incurred by the city officers in its operation. The question presented here has not been heretofore passed upon by this court on identical facts, but so many closely related holdings have been made that, when taken together, they leave nothing to be declared as new in answer to this contention. In the case of City of Pawhuska v. Pawhuska Oil & Gas Company, 118 Okla. 201, 248 P. 336, this court held:

"The debt limit provisions of section 26, article 10, of the state Constitution do not apply to an incorporated city in the operation of a public utility owned exclusively by such city."

The immediate question for determination in that case was whether it was necessary for the city council and excise board to set up estimates and appropriations out of the utility revenues, and it was not necessary for the court to say (and it did not undertake to say) what limitations did control with respect to the incurring of indebtedness growing out of the operation of utilities "owned exclusively by such city." That question was passed over with the further quoting of section 27 of article 10 of the Constitution as being the exception to section 26, and without any attempt to construe the two sections together or to set up such

limitations. In the subsequent case of Zachary v. City of Wagoner, 146 Okla. 268, 292 P. 345, the municipal indebtedness involved was the purchase price of Diesel engines to be used in the light and water plant of the city of Wagoner, and was incurred strictly on the corporate side of the city's business. This court said:

"Under the decisions of this court, and the Constitution and laws of Oklahoma, the agreement to pay for the material purchased creates an indebtedness, no matter from what source the funds are to be derived from which the payment is to be made. Sections 26 and 27, article 10, supra, contain nothing that limits their application to indebtedness to be paid from funds derived from ad valorem tax levy. They are general in their terms and they will be applied by this court to all manner of indebtedness, no matter how created or from what source the indebtedness is to be paid. As well might a municipality contend that an indebtedness was not an indebtedness because it was to be paid from receipts from gross production tax or other sources of income other than ad valorem taxation. We cannot give our approval to any such theory of the law.

"There is nothing in the City of Pawhuska v. Pawhuska Oil & Gas Company, 118 Okla. 201, 248 P. 336, contrary to this holding.

"We have discussed the effect of section 6, article 18, of the Constitution in Re Protest of Bliss, 142 Okla. 1, 285 P. 73, and what we there said is applicable herein. The provision authorizing municipalities to engage in business was not intended to and does not destroy constitutional limitations on the incurring of indebtedness nor extend the power to incur indebtedness. When engaged in such business, the city is subject to such limitations."

The court in that case (Zachary v. City of Wagoner) went further to indicate how section 27 of article 10 allowed the first limitations (section 26) to be avoided or exceeded in these words:

"If the city of Wagoner desires to purchase the property sought to be purchased, it may submit the question to the qualified property taxpaying voters of the city, and upon the approval thereof by a majority thereof the city may make the purchase without regard to any constitutional limitation."

While the case of Public Service Co. of Oklahoma v. City of Tulsa, 174 Okla. 58, 50 P. (2d) 166, decided by this court on October 1, 1935, did not involve the direct question before us, the language of Mr. Justice Phelps in writing that opinion is so appropriate it is again quoted as follows:

"It was to be expected that a large part of the expenses of such municipal corporations will be incurred in matters wholly proprietary, having little to do with the general public welfare of the state, and that the consequent indebtedness must be paid mainly by taxation. Had the people of this state who must pay the taxes intended by their adoption of the Constitution to leave the door wide open for municipal officials to burden them with millions of dollars of indebtedness (for there would be no limit) covering purely local and often unnecessary projects, without the consent of the people at an election called for that purpose, they surely would have expressed such intention in words other than those of absolute forbiddance to become indebted in excess of the income and revenue 'in any manner,' or 'for any purpose.'"

The requirements for the making of estimates and levies are statutory, but the constitutional prohibition against exceeding the revenues for any year without the consent of the taxpayers is not abrogated or affected by the mere lack of statutory requirements for the setting up of estimates and appropriations with respect to the earnings and expenses in connection with the ownership and operation of utilities.

With the sole exception of the rule of the Smartt Case (67 Okla. 141, 169 P. 1101), these limitations have been uniformly applied to indebtedness on the governmental side of the municipal business, and it would certainly be an anomalous situation to apply the constitutional limitations to governmental expenditures and to hold in the same breath that corporate expenditures (which are of lesser importance) are above the Constitution.

There is no inconsistency between sections 26 and 27 of article 10 of the Constitution, but section 27 clearly provides that in order to avoid the limitation of section 26 as to the incurring of indebtedness on the corporate side of the municipal business, the consent of a majority of the qualified taxpaying voters of the city must be first given. If this were not clear from a reading of sections 26 and 27 together, the case of Zachary v. City, supra, would be sufficient to settle the question.

Much stress is laid by plaintiff in its brief upon its allegations of emergency. However, it might be observed that the plaintiff was under no emergency except the desire to sell and be paid for its machinery and that no mandatory duty devolved upon it in connection with the city's furnishing water to its customers. As said by this court in the case of Graves v. Board of Com'rs, 170 Okla. 282, 39 P. (2d) 532:

"Here the plaintiff is not a public official. He was under no legal duty to perform the service. He did perform it, but his claim against the county is a contractual claim. His action is as upon contract."

This court has further disposed of the contention of emergency in the case of Excise Board of Carter County v. C., R. I. & P. Ry. Co., 152 Okla. 120, 3 P. (2d) 1037, in the following language:

"There is a vast difference between the duty of a sheriff to feed and maintain prisoners in the county jail, whom he could not release therefrom without subjecting himself to removal from office, and the duty of the county commissioners to construct or repair bridges. It is not mandatory upon the county commissioners to build any bridge at any particular place or at any particular time. These matters are entirely within their discretion, limited only by the funds within their command."

This court has twice recently stated that it will not extend the mandatory rule of the Smartt Case (Smartt v. Board of Com'rs, 67 Okla. 141, 169 P. 1101). See Faught v. City of Sapulpa, 145 Okla. 164, 292 P. 15, and Protest of Kansas City Southern Ry. Co., 157 Okla. 246, 11 P. (2d) 500.

While it might be a matter of convenience to its citizens, not even the city of Depew was under any mandatory duty to furnish them with water—and certainly no such mandatory duty devolved upon the plaintiff. It might be further noted that the city does not even furnish water to all of its inhabitants, but only to those who pay for this special service as customers. The question of lack of mandatory duty was also passed upon in the cases of Board of Commissioners v. Alexander, 171 Okla. 288, 42 P. (2d) 884, and Anadarko Funeral Home v. Scarth, 173 Okla. 103, 46 P. (2d) 539, decided by this court on April 30, 1935, and Board of Commissioners v. Morningside Hospital, 175 Okla. 242, 51 P. (2d) 928, decided July 2, 1935. These cases overwhelmingly establish the rule in this state that the only emergency which can legalize contractual municipal expenditure in excess of constitutional limitations without the consent of the taxpaying voters as provided in section 27 is the **emergency of the performance of mandatory constitutional governmental duty imposed by law.** No exercise of discretion, however commendable its motive or object, can come within this classification of "emergency" superior to constitutional limitations upon expenditures.

As a third proposition, plaintiff lays down the following contention in its brief:

"As to contracts made by a municipality acting in its proprietary capacity, the principles of estoppel, ratification and waiver apply the same as to private corporations and individuals."

In the case of In re Town of Afton, 43 Okla. 720, 144 P. 184, this court held in the third paragraph of the syllabus as follows:

"The warrants issued as evidence of said indebtedness, being utterly void for want of power to create said indebtedness, were not subject to ratification, and could not be made valid by a vote of three-fifths of the legal voters of said municipality, nor by a decree of the court, since the power to authorize originally is a condition precedent to the power to ratify subsequently."

The court went further in the body of the opinion to hold that not even the Legislature could validate, or authorize the court to validate, obligations attempted to be incurred in violation of this section of the Constitution. In speaking of the validating act of the Legislature, the court said:

"It is apparent that the purpose in passing the same was an attempt on the part of the Legislature to authorize the court to validate indebtedness attempted to be created, which is invalid under the Constitution. This the Legislature has no power to do. It could not authorize the court to give life and validity to something which never had any legal existence."

In the case of Faught v. City of Sapulpa, 145 Okla. 164, 292 P. 15, this court said:

"No rule of estoppel can operate against a taxpayer or the debtor corporation, thereby validating a void thing."

In the case of State v. McCurdy, 171 Okla. 445, 43 P. (2d) 124, this court further quoted with approval this language from the Supreme Court of Kansas:

"Laches and estoppel do not operate against the state, and no procrastination of public officials prejudices the state, and their tardiness neither bars nor defeats the state from vindicating its sovereign rights, except where positive statutes so provide."

It would be a far cry from the constitutional provision cited to hold that while neither the Legislature, nor the courts, nor the people by a three-fifths vote can breathe the breath of life into any attempted governmental indebtedness incurred in violation of the Constitution, that the bridle is off on the corporate side of the municipal business and that there are no barriers to the creation of corporate indebtedness if the city only installs and uses the equipment which is the subject of the indebtedness at-

tempted to be created. This court will not so hold.

Plaintiff lays down the fourth proposition, that its petition stated a cause of action inasmuch as it alleged that it had sold and furnished the pump to the city and that it had not been paid therefor. This contention has been disposed of by this court in Protest of Kansas City Southern Ry. Co., 157 Okla. 246, 11 P. (2d) 500, where it was held:

"Where it is sought to recover a judgment against a municipality on a claim ex contractu, the provisions of section 26, article 10, of the Constitution stand as a bar to the recovery of the judgment thereon until it is pleaded and admitted or proved that the indebtedness sued on was not contracted in violation of those provisions."

See, also, Graves v. Board of Com'rs, 170 Okla. 282, 39 P. (2d) 532, and Excise Bd. of Le Flore County v. Kansas City Southern Ry. Co., 173 Okla. 238, 47 P. (2d) 580, decided by this court on June 18, 1935.

It is not enough to allege that the pump in question was furnished and that it has not been paid for. The action not being on a warrant but on a claim ex contractu, in order to state a cause of action, the plaintiff must allege that the indebtedness was incurred within the constitutional limitations. The petition here fails to make any such allegation. The appeal in this case is entirely without merit.

The Supreme Court acknowledges the aid of District Judge E. A. Summers, who assisted in the preparation of this opinion. The District Judge's analysis of law and facts was assigned to a Justice of this court for examination and report. Thereafter, the opinion, as modified, was adopted.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BUSBY, WELCH, PHELPS, CORN, and GIBSON, JJ., concur. BAYLESS, J., absent.