## PUBLIC SERVICE COMPANY OF OKLAHOMA v. CITY OF WAGONER.

No. 25258.   Nov. 16, 1937.

V. E. McInnis and T. M. Markley, for plaintiff in error.

W. O. Rittenhouse, for defendant in error.

DAVISON, J.   The plaintiff, Public Service Company of Oklahoma, brought this action in the district court of Wagoner county against the city of Wagoner to obtain a judgment against the defendant city for a balance alleged to be due from the defendant for electric energy or current furnished under contract. From a judgment of the court sustaining a demurrer to its petition, the plaintiff has appealed.

The parties will be referred to as they appeared in the trial court.

It is shown by the allegation in the plaintiff's petition that on October 16, 1930, and for many years prior thereto, the defendant, city of Wagoner, was engaged in the business of distributing and selling electric energy to its residents, citizens, and inhabitants and lighting its streets; that electricity was used for pumping water for its water supply for distribution and sale to its citizens and inhabitants; that the generating plant was owned by the defendant and that it was doing such business partly in its proprietary capacity; that on or about October 16, 1930, the generating plant became nonusable and unable to continue to furnish adequate electric service; that thereby defendant determined that an emergency had arisen which demanded that it procure an immediate and adequate supply of electric energy for its customers; that on October 17, 1930, pursuant to a city ordinance passed the same day, a contract was entered into between the plaintiff and defendant wherein it was provided that the plaintiff was to furnish to the defendant city and its inhabitants electric current for a period beginning October 17, 1930, and ending July 31, 1931.

It is further alleged in the petition that at the termination of that contract, the defendant passed an ordinance extending

the term of the contract for a period of 30 days, and that thereafter defendant passed a resolution requesting the plaintiff to continue its delivery and sale of electric energy to defendant until further notice. That pursuant to the contract, plaintiff furnished the defendant city with electric energy during the dates mentioned; that the defendant paid the amount due for the month of October, 1930, upon bill rendered therefor, but has failed and refused to pay all bills presented for any of the subsequent months and that the amount **due was $11,281.33,** for which this action was instituted. A copy of the contract, together with all proceedings authorizing same and including list of accounts presented for payment, were attached to the petition as exhibits thereto.

The defendant filed its demurrer to the plaintiff's petition stating the following grounds:

"(1) That said petition does not state sufficient facts to constitute a cause of action against this defendant, and does not state sufficient facts to entitle said plaintiff to a judgment against this defendant, for the amount therein prayed for, or in any other amount.

"(2) That said petition does not allege that the contract or contracts therein sued upon were ever authorized or ratified and/or confirmed by a majority of the qualified property taxpayers of the city of Wagoner, voting thereon at any general or special election held in said city, as provided, in section 2, article 7, of the charter of the city of Wagoner, which was then and there in full force or effect at the time the alleged contracts were entered into."

The demurrer was sustained by the court partly upon the grounds that the contracts sued upon were not executed in compliance with the provisions of the city charter of the defendant city then in force and effect, providing that the defendant city could contract for electric power to be furnished only,

"Whenever the said contract shall have been ratified and confirmed by a majority of the qualified taxpayers of the city, voting upon such proposition at a general or special election."

The court further held that an emergency for making the contract was not properly alleged, and that while an emergency contract could have been entered into for a limited time, it could be no greater time than would have been required to submit such contract to the taxpaying electors of the defendant city as required by the charter provisions.

The plaintiff has presented in its brief six propositions in support of its contention for reversal of the judgment. We are concerned here in determining whether or not the petition of the plaintiff stated such sufficient cause of action against the defendant as would preclude the trial court from sustaining a demurrer thereto.

The plaintiff alleged in its petition that the defendant, city of Wagoner, being engaged in selling and distributing electric energy to its residents, citizens, and inhabitants and for lighting streets and pumping water for city water supply, was doing business in its proprietary capacity as well as complying with its obligations and duties to its residents, citizens, and inhabitants.

Much space is taken in plaintiff's brief in the discussion of the dual powers of a municipal corporation. One, the legislative, public, or governmental, in the exercise of which it is a sovereignty and governs its people; the other the proprietary, quasi-private capacity conferred upon it, not for the purpose of governing its people, but for the private advantage of the inhabitants of the city and the city itself as a legal personality. It is contended that in exercising the rights of a proprietor in the management of its electric business, the powers of a municipality are not limited as when acting in its governmental capacity, but its officers and council resemble the directors and officers of a private corporation and in a large degree are governed by rules applicable to private corporations whereby the defendant has authority to become obligated under contract acting in such separate proprietary capacity.

The existence of the dual character of municipal corporations as distinguishing their proprietary capacity from the governmental cannot be questioned here and has often been recognized by this court. Oklahoma City v. Hoke, 75 Okla. 211, 182 P. 692; City of Durant v. Allen, 67 Okla. 1, 168 P. 205; Fritz v. Edmond, 66 Okla. 262, 168 P. 800.

Furthermore, an equally well-recognized rule of this court is the principle that "in the exercise of a municipality of its so-called proprietary or quasi-private powers, it is held to the same degree of liability for its contracts and undertakings as a private corporation", does not alter the rule that a municipality is not liable

on contracts which are unenforceable in law. Oklahoma Natural Gas Corporation v. City of Enid, 179 Okla. 283, 65 P. (2d) 440; Public Service Company of Oklahoma v. City of Tulsa, 174 Okla. 58, 50 P. (2d) 166.

This court has frequently held that the statutes of this state relating to revenue and taxation do not require the mayor and councilmen of an incorporated city, or officers exercising like power in a city having a charter form of government, to make and certify to the excise board any statement of the estimated needs of such municipality in the operation of a public utility owned exclusively by it. City of Pawhuska v. Pawhuska Oil & Gas Co., 118 Okla. 201, 248 P. 336; In re Bliss, 142 Okla. 1, 285 P. 73; Protest of St. Louis-San Francisco Ry. Co., 153 Okla. 283, 5 P. (2d) 763; In re Murray's Protest, 140 Okla. 240, 285 P. 80. This court has also held that neither the statute nor the Constitution specifically prescribes the purpose to which profits derived from municipally owned utilities must be appropriated. In re Murray's Protest, supra.

These rights and privileges so recognized are limited to such municipally owned utilities as are maintained and operated exclusively from the income from such public utilities. In Re Bliss et al., 142 Okla. 1, 285 P. 73, this court held:

"Where the water plant is operated separate and apart from the current expense fund of the municipality and without the aid of ad valorem taxation expenditures for operating expenses, replacements, and extensions may be made from the income from the plant for the fiscal year without an appropriation having been made therefor."

A city owned public utility may or may not be controlled by the general taxation statutes and current expense provision of the law governing municipalities. In either event, however, the municipal officers are required to make and publish an annual statement of the financial condition of such public utility. Such a statement may be included in the current expense statement of the municipality or in a separate statement. The surplus balance on hand at the end of the fiscal year must be considered as a resource in determining the amount of money to be raised by ad valorem taxation for the current year and added to either current expense or sinking fund. In re Bliss, supra.

There is nothing in the plaintiff's petition nor exhibits attached thereto which shows or attempts to show that the municipally owned light plant of defendant is operated separate and apart from the general taxation statute of the state. The provisions of a city charter relating to the use of funds received from operation of municipally owned light plant does not authorize the issuance of municipal warrants to pay operating expenses of the plant, except in pursuance of an appropriation made therefor by the excise board. Leonard v. City of Wagoner, 178 Okla. 553, 63 P. (2d) 93. This court has held that it was not intended that the debt limitations imposed upon municipalities by section 26 of article 10 of the state Constitution was restricted to indebtedness incurred in the governmental capacity, but applies equally to the city's proprietary functioning. Oklahoma Natural Gas Corp. v. City of Enid, supra; Zachary v. City of Wagoner, 146 Okla. 268, 292 P. 345.

Regardless of the fact that a municipally owned light or water plant functions partly governmental and partly proprietary, municipal warrants drawn against the current general fund of the city to pay for expenses in either capacity become an obligation of the city. There is nothing in plaintiff's petition to show that the judgment it seeks against the city of Wagoner, if obtained, would be paid from any appropriation made therefor and would not become a sinking fund obligation of the defendant city to be paid by a tax levy as other sinking fund obligations.

It is alleged in the plaintiff's petition that its contract with the defendant to furnish electric current or energy was legal and in compliance with the city ordinances providing therefor. The trial court took judicial cognizance of the fact that section 2 of article 7 of the city charter of the defendant city required that no contract be entered into by the defendant to furnish power for lighting the defendant city until such contract was confirmed by a majority of the qualified taxpayers of the city, voting at an election. The plaintiff then contended that said section had been repealed by an election held December 13, 1929, but its petition does not so allege and the court found to the contrary.

It is immaterial, in so far as the question to be determined here is concerned, whether the city had authority to make a legal contract for electric energy under the provisions of the ordinances passed

therefor and the charter, or under the municipal code. In neither event could the defendant city make a legal contract binding itself for the expenses to be incurred by the terms of the contract except in pursuance of an appropriation made by the excise board for such purpose. Leonard v. City of Wagoner, supra.

The plaintiff's petition filed herein does not allege that any appropriation had been allowed to meet the obligations assumed by the defendant under the terms of the contract. There is no allegation in the petition to the effect that, if the sum contracted to be paid for electric current were paid, it would not violate the provisions of section 26, article 10, of the Constitution of Oklahoma, which strictly forbids a city or other municipal corporation to become indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year without the assent of three-fifths of the voters thereof voting at an election to be held for that purpose.

In Protest of Kansas City Southern Railway Company, 157 Okla. 246, 11 P. (2d) 500, this court held:

"Where it is sought to recover a judgment against a municipality on a claim ex contractu, the provisions of section 26, article 10, of the Constitution stand as a bar to the recovery of the judgment thereon until it is pleaded and admitted or proved that the indebtedness sued on was not contracted in violation of those provisions."

See, also, Layne-Western Company v. City of Depew, 177 Okla. 338, 59 P. (2d) 269.

In Faught v. City of Sapulpa, 145 Okla. 164, 292 P. 15, this court said:

"In order to state a cause of action, the petition must allege that the indebtedness incurred was not in excess of the income and revenue provided for that purpose, or that it was authorized by a vote of the people." See, also, Protest of Carter Oil Co., 148 Okla. 1, 296 P. 485.

This court has many times held that:

"Whoever deals with a municipality does so with notice of the limitations on it or its agents' powers. All are presumed to know the law and those who contract with it or furnish it supplies do so with reference to the law; and if they go beyond the limitations imposed, they do so at their peril". Protest of Carter Oil Co., supra; Dougherty-Nichols Construction Co. v. Town of Jinks, 115 Okla. 104, 242 P. 167.

The plaintiff alleged in its petition that the generating plant of the defendant city became nonusable and unable to continue to furnish adequate and continuous electric service and an emergency had arisen which demanded that the defendant procure an immediate and adequate supply of electric energy for its said customers. These allegations are not supported by either the city ordinance passed by the city council authorizing the making of the contract sued upon or by the contract itself, attached to the petition and made a part thereof. The ordinance and the contract base the necessity for making the contract upon the fact that electric energy and current could be obtained from plaintiff cheaper and more uniform than same could be produced in the defendant's plant. When the petition is considered as a whole, there is no allegation that an emergency had arisen demanding immediate relief in the supply of electric current for the defendant city which might have been sufficient grounds to contract for same for temporary relief.

The plaintiff contends that the question here presented involves no question of revenue from taxation. no question of expenditures of municipal funds, no question of creation of indebtedness beyond appropriations and revenues. It is contended that this case is governed by the holding in the case of State ex rel. Woods v. Cole, 178 Okla. 567, 63 P. (2d) 730. With this contention we cannot agree, but, to the contrary, we think and hold that the rule adopted by this court in the case of Layne-Western Co. v. City of Depew, supra, applies in the instant case.

Finding no error in the judgment of the trial court, the same is affirmed.

OSBORN. C. J., BAYLESS, V. C. J., and WELCH, PHELPS, CORN, and HURST, JJ., concur. RILEY and GIBSON, JJ., absent.