## LEONARD v. CITY OF WAGONER.

No. 22489.   Dec. 8, 1936.

John C. Graves and Fred Leonard, for plaintiff in error.

Hal C. Thurman and Bower Broaddus, for defendant in error.

WELCH, J.   Upon suit by the city to recover of its treasurer and his bondsmen sums of money paid out by the treasurer upon warrants issued in excess of appropriations made and approved, the city recovered judgment for $4,000, and upon payment thereof by the bondsmen, and judgment in their favor against the treasurer for the amount so paid, the treasurer has appealed.

The question presented here is stated by plaintiff in error, hereinafter referred to as the treasurer, in his brief as follows:

"Plaintiff's petition, in each of its alleged causes of action, proceeds upon the theory that the board of commissioners of plaintiff and the excise board of Wagoner county were by the statute law of the state given authority to make the annual estimates and appropriations for the water and sewerage division of the city's public utilities and for the light and power division of the public utilities, and that any expenditure in excess of the appropriations so made became a liability on the bond of the plaintiff in error. * * *"

The city is operated under a charter, and the treasurer contends that the charter specifically appropriates all funds collected from the sale of water and lights for use as shown hereafter, except such as may remain at the end of the fiscal year, and that by reason thereof the city officials are not required to obtain appropriations thereof by the excise board, and, indeed, that neither the city officials nor the excise board had authority under general law to appropriate the same or in any manner restrict the use thereof as governed by the general law restricting use of public funds to not exceed the amount of appropriations.

The various charter provisions which are presented by the respective parties for our consideration are assembled and quoted at this point for convenience. They follow:

Section 4, article VII:

"Funds. The Commissioner of Lights, Water and Sewerage shall deposit all monies received from the sale, rent or use of lights, and water, in the treasury of the city to the credit of the respective funds to be known as the 'Light Revenue Fund' and the 'Water Revenue Fund,' respectively, and shall be kept separate and apart each from the other and separate and apart from other funds of the city.

"None of the monies in said 'Light Revenue Fund,' shall be appropriated or used for any purpose, other than the following, in the following order, to wit:

"First—For the necessary expense of conducting the electric light division of this department, or operating the electric light plant, and making all current and ordinary extensions, betterments, repairs, and the purchase of material for the effective operation of said electric light plant.

"Second—For the payment of installments of interest and annual sinking fund payments coming due upon outstanding electric light bonds.

"Third—For extraordinary improvements or betterments to the properties and systems of supply and distribution of the light division of this department.

"None of said moneys in said 'Water Revenue Fund' shall be appropriated or used for any purpose other than the following in the following order, to wit:

"First—For the necessary expenses of conducting the water works division of this department, of operating the waterworks, and of making all current and ordinary extensions, betterments, and repairs for effective operation of said waterworks division of this department, and the supply of wholesale potable waters.

"Second—For the payment of installments of interest and annual sinking fund payments coming due upon outstanding waterworks bonds.

"Third—For extraordinary improvements of and betterments to the properties, work and system of supply and distribution of this department, including the purchase of necessary lands and other property."

"Equalization, Assessment, and Levy of Taxes—The statutes of the state of Oklahoma, now or hereafter in force, shall govern the assessment, equalization and collection of taxes for and on behalf of the city and also in respect to the certification and collection of all delinquent charges, assessments or taxes. The mayor, city clerk and city assessor, shall constitute the city board of equalization. Section 23, article VI, Wagoner City Charter."

Section 25, article VI, provides:

"Estimate of Expenditures of Each Department. On or before the first day of July of each year, the mayor and each commissioner shall furnish the board of commissioners estimates in writing of the probable expense to be incurred in their several departments for the ensuing fiscal year, specifying in detail such probable expenditures including a statement of the salaries of their subordinates.

Section 26, article VI, provides:

"The statutes of the state of Oklahoma, now or hereafter in force, shall govern the making of the statement of the fiscal condition of the city and of the estimated needs thereof for current expenses for the ensuing fiscal year, including sinking funds and interest on the bonded indebtedness of the city. Such statements of the fiscal condition of the city and the estimated needs thereof for the ensuing fiscal year shall be made out and adopted by the board of commissioners, in open session thereof, at such time and in manner then required by the laws of the state of Oklahoma, and be spread at large upon the minutes of that meeting."

Section 1, article V:

"The executive and administrative functions, duties, powers and authority of the city shall be distributed into and among the three following departments:

"Department of police, fire, finance and revenue.

"Department of lights, water and sewerage.

"Department of streets, alleys, health and public property."

Section 27, article VI, provides:

"Appropriations. Under the basis of the estimated needs for current expenses for the ensuing fiscal year, made out and adopted by the board of commissioners, the several sums shall forthwith be appropriated by the board of commissioners by ordinance to the several purposes therein named for the ensuing fiscal year, said ordinance to be entitled 'The Annual Appropriation Ordinance,' and the same shall be irrepealable and not subject to amendment, except as otherwise provided in this charter; provided, however, in case the proper authority making the levy of taxes to cover said estimate should revise the estimates made by the board of commissioners and certified to such authority, the board of commissioners shall forthwith thereafter amend 'The Annual Appropriation Ordinance' in accordance with such revision."

Section 31, article VI, provides:

"No Liability Without Appropriation. Neither the board of commissioners nor any officer or employee of the city shall have authority to make any contract involving the expenditure of public money or impose upon the city any liability to pay money unless and until a definite amount of money shall

have been appropriated for the liquidation of all pecuniary liability of the city under such contract or in consequence thereof to mature during the period covered by the appropriations. Such contract shall be null and void as to the city for any other and further liability provided: First, that nothing herein contained shall prevent the board of commissioners from providing for payment of any expense, the necessity of which is caused by any casualty, accident, or unforeseen contingency arising from the passage of the annual appropriation ordinance; and second, that the provisions of this section shall not apply to or limit the authority conferred in relation to bonded indebtedness, nor for moneys to be collected by special assessments for local improvements."

Section 18, article XIV, provides:

"Every officer who shall approve, allow, or pay any demand not authorized by law or this charter, shall be liable to the city individually on his official bond for the amount of the demand so illegally approved, allowed, or paid."

The pertinent facts are that for the fiscal year involved the city commissioners prepared and filed with the excise board its financial statement and estimate of needs in conformity with the general laws relating thereto, and in pursuance of the request therefor and in conformity with the general laws relating to the making of appropriations for municipal purposes, the excise board appropriated for current expense purposes for the "water and sewerage" division of the "lights, water and sewerage" department of the city the total sum of $6,000, and for the "lights" division of such department the total sum of $34,495.37. During the fiscal year for which such appropriations were made, warrants of the city for items of current expense in such departments were issued in excess of such appropriation to the extent of the judgment here involved, which warrants were paid by the treasurer from the funds of the city.

The treasurer contends that the above-quoted provisions of the charter providing that the general laws of the state shall govern the making of the financial statement and estimated needs and the provisions thereof prohibiting liability without appropriations, relate only to funds derived from taxation and balances of funds on hand at the close of the preceding year. It is further urged that the charter provision specifically prescribing the use of the funds collected through the sale of commodities from the water and light plant, is in the nature of a charter appropriation of such funds and supersedes or prevents the operation of the general laws relating to public funds, municipal finances and accounting, municipal appropriations, and restrictions upon expenditures.

It is obvious that it is unnecessary for us to construe the charter provisions with the view of determining whether or not the charter requires the city authorities to confine expenditures of the water and light receipts to appropriations thereof by the excise board, although we might remark in passing that section 31, article 6, of the charter restricts the expenditure of "public money" to the amount of appropriations, and in former decisions we have treated similar receipts as being public money.

See In re Bliss, 142 Okla. 1, 285 P. 73; and for further enlightening determinations, see Zachary v. City of Wagoner, 146 Okla. 268, 292 P. 345; City of Sapulpa v. Land, 101 Okla. 22, 223 P. 640; Oklahoma News Co. v. Ryan, 101 Okla. 151, 224 P. 969; Ryan v. Roach Drug Co., 113 Okla. 130, 239 P. 912; Ryan v. Cook Building & Investment Co., 113 Okla. 78, 239 P. 919; Jones v. Kennedy, 118 Okla. 224, 247 P. 53; and Pitts, County Treas., v. First National Bank, 138 Okla. 284, 281 P. 133.

The precise issue here as stated by the treasurer is whether or not the city commissioners and excise board had authority to appropriate the same in view of his assertion that such authority, if any, is denied by the terms and provisions of the charter.

We agree with the treasurer that section 4, article 7, of the charter, supra, is a specific charter dedication of the funds for the several purposes therein named, and by virtue of such provision the funds should be used for the designated purposes. It does not necessarily follow, however, that such funds may or must be used other than in pursuance of the appropriation ordinance and the other charter provisions; and it appears quite certain that those provisions do not prohibit the city officials from including the same in their appropriation ordinances and obtaining appropriation thereof in conformity with the general laws of the state relating to appropriations.

To accept the treasurer's theory would mean that the charter would prohibit the city from issuing general fund warrants in payment of current or operating expense of its water and light department based upon anticipated revenue derived from that source. There is no charter provision nor is there provision of general law authorizing the issuance of a warrant which is a gen-

eral charge against the entire municipality, except in pursuance of valid appropriations made by the excise board. If, then, the city officials and the excise board have no authority to consider the funds involved as a basis of financing appropriations, then there is no authority for the city to obtain the advantage of the general laws relating to the issuance of warrants, and it would not be able to use these funds until collected, and they most certainly wou'd not be authorized to issue a warrant which is a general obligation of the city in anticipation of future collection of the fund. We conclude, therefore, that the charter provisions do not prohibit the funds involved to be used as a basis of financing appropriations under the general laws for the purposes specified in the charter.

The treasurer further asserts that under the general laws the funds here involved may be expended for water and light plant purposes without appropriation, citing in support thereof the following cases from this court: In re Bliss, supra; St. L.-S. F. Ry. Co. v. Andrews, Co. Treas., 137 Okla. 222, 278 P. 617; Appeal of St. L.-S. F. R. Co., 142 Okla. 176, 286 P. 345; Protest of St. L.-S. F. R. Co., 153 Okla. 283, 5 P. (2d) 763. See, also, for related cases; Aaronson v. Smiley, 142 Okla. 29, 285 P. 59; In re Tax Levies of City of Woodward, 143 Okla. 204, 288 P. 458; City of Pawhuska v. Pawhuska Oil & Gas Co., 118 Okla. 201, 248 P. 336; Smith v. City of Tahlequah, 145 Okla. 103, 291 P. 981; Zachary v. City of Wagoner, supra; and Public Service Company of Oklahoma v. City of Tulsa, 174 Okla. 58, 50 P. (2d) 166.

In Re Bliss, supra, being the case principally relied upon, it was held:

"Where the water plant is operated separate and apart from the current expense fund of the municipality and without the aid of ad valorem taxation, expenditures for operating expenses, replacements, and extensions may be made from the income from the plant for the fiscal year without an appropriation having been made therefor."

None of the cited cases involve a fact situation similar to the instant case. It is true that some of the cases appear to recognize the authority of the city to conduct its municipally owned water or light plants wholly independent and apart from the general laws relating to appropriations, but this court has never held that it is compulsory that it do so, nor has it held that when the facts in the case show that the municipality is conducting such activities under the general laws relating to the issuance of general fund warrants it may then disregard the laws limiting the liability that may be fastened upon the municipality and issue warrants wholly in disregard of the general law.

The facts here show that the city officials procured appropriations from the excise board for the departments involved. It may be true that no tax levy was made as a basis of financing such appropriations. In that event it necessarily follows that the revenues to be derived from the water and light plant were pledged as a basis of financing these appropriations. The city issued general fund warrants based upon the anticipated collection of this revenue. All of those warrants which were issued within the appropriations constituted a general obligation of the city, and had the revenue not been collected, they cou'd undoubtedly have been reduced to judgment, and it would then have been contingently necessary to levy general ad valorem taxes for the payment of same. Had the city not procured these appropriations, it could not have issued such warrants, because no authority exists for the issuance of warrants except in pursuance of an appropriation by the excise board. It is pointed out in the cited cases that the water and light plants must be operated by the city separate and apart from the current expense fund and without the aid of ad va'orem taxation before the apparent rules therein announced apply. When such departments are being operated by the issuance of the general warrants of the city which are a general obligation, then the department is not being operated separate and apart from the current expense fund and without the aid of ad valorem taxation, because the ad valorem taxpayers are contingently liable upon the warrants and must pay the same in case there is a failure to collect the anticipated revenue upon which such warrants were based.

We, therefore, conclude that under the facts here the city of Wagoner was not operating its water and light department separate and apart from the current expense fund and without the aid of ad valorem taxation, and that having accepted the benefits of the general laws relating to the appropriation and issuance of warrants, and having procured appropriations based upon a pledge of anticipated collections from the water and light plant, it is bound by the provisions thereof prohibiting the issuance of warrants in excess of appropriations made and approved by the excise board.

The cause is affirmed.

McNEILL, C. J., and PHELPS, CORN, and GIBSON, JJ., concur. OSBORN, V. C. J., and RILEY, BAYLESS, and BUSBY, JJ., absent.