CITY OF McALESTER et al. v. STATE ex rel. STATE BOARD OF PUBLIC AFFAIRS.

No. 31155.    Dec. 12, 1944.

Rehearing Denied Jan. 9, 1945.

*154 P. 2d 579.*

H. I. Aston, City Attorney of McAlester, for plaintiffs in error.

Mac Q. Williamson, Atty. Gen., Fred Hansen, Asst. Atty. Gen., and Roy Cox, of Oklahoma City, for defendant in error.

GIBSON, V.C.J.   This action was instituted in the district court of Pittsburg county by the State of Oklahoma on relation of the Board of Public Affairs against the city of McAlester and certain of its managing officers to enjoin defendants from discontinuing the city's alleged contractual obligation to furnish water to the State Penitentiary. Judgment was for plaintiff, and defendants appeal.

The parties plaintiff and defendant will be referred to herein as the State and the city, respectively.

According to the petition, the State and the city entered into a written contract in 1919 wherein it was agreed that the State should furnish all work and labor incident to the construction of a lake as a part of the city's water system, and, as payment therefor, the city was to furnish water to the State Penitentiary "at a price computed at the cost to the city of delivering the water in the standpipe of the city."

It is further alleged that the State performed the work and labor at a cost of $377,557.35.  The city furnished water as agreed up to June 30, 1935, to the aggregate value of $188,856.26, leaving a balance due the State of $188,707.09.

On July 1, 1935, a new contract, it is alleged, was entered into between the parties wherein it was agreed that thereafter the State should pay the city at the rate of 8 cents per thousand gallons for the first 15,000,000 gallons of water per month, and for all in excess thereof per month, at the rate of 16 cents per thousand gallons.  Payments for such charges were to be made, $500 in cash per month, and the State was to furnish one-third of the electric current necessary to. operate certain of the city's pumps.  The balance due the city for such water over and above the $500 and the value of the electric current aforesaid was to be credited monthly on the balance of $188,707.09 due the State as of July 1, 1935.

It is further alleged that the city

1

continued to furnish water under the latter arrangement until the balance due the State was reduced to $101,-787.80, when the city notified the State that the water service would be discontinued on February 20, 1942, unless the city's claim against the State for $817,988.05, allegedly due for water furnished the penitentiary, was paid before that date.

The State alleges that it is not indebted to the city in any amount, and prays that it be enjoined from discontinuing the water service until its obligation to the State under the contract of 1935 be satisfied; that otherwise, the State, for failure of water supply to the penitentiary, would suffer irreparable injury, and is without adequate legal remedy.

The anwser denied any indebtedness to the State, and charged that the contracts of 1919 and 1935 were void in that they were in violation of the Constitution and statutes, particularly section 26, art. 10, Constitution, and 62 O. S. 1941 §479.

The contracts in question were entered into, it is said, by the State Board of Public Affairs pursuant to the general powers and authority conferred on it by 57 O. S. 1941 §132.

The board may have acted well within its powers in providing water for the state institution, but the city in such case is governed by other and different laws. Municipalities are given considerable latitude with respect to engaging in business of a public nature (sec. 6, art. 18, Const.), but they must confine the financing of the construction and maintenance thereof within the limitations prescribed by sections 26, 27, art. 10, of the Constitution.

According to the provisions of said section 26, a municipality, without the assent of three-fifths of the voters thereof, is not "allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year." Said section 27, however, permits the municipality, upon the assent of a majority of the qualified taxpaying voters participating in an election, to become indebted in excess of the amount specified in section 26, for the purpose of financing the purchase or construction of public utilities.

The construction and operation of a public utility constitute proprietary functions of a city as distinguished from its governmental functions. And this court has held that the debt limitations imposed by section 26 apply as well to one function as to the other. Oklahoma Natural Gas Corp. v. City of Enid, 179 Okla. 283, 65 P. 2d 440. But the rule there stated applies only where the proprietary function is operated on the annual appropriation plan, or where the alleged creditor seeks to recover a judgment that would constitute a charge against the sinking fund. See Leonard v. City of Wagoner, 178 Okla. 553, 63 P. 2d 93; Public Service Co. of Oklahoma v. City of Wagoner, 181 Okla. 281, 73 P. 2d 464.

But it is well settled by the decisions of this court that a city may operate a public utility separate and apart from the current appropriations and without the aid of ad valorem taxation, and replacements and extensions of the utility may be paid for out of the income therefrom without an appropriation having been made therefor. In re Bliss, 142 Okla. 1, 285 P. 73. See, also, Leonard v. City of Wagoner, supra, and cases there cited.

In the case In re Bliss, above, this court said:

"Where the water plant is operated separate and apart from the current expense fund of the municipality and and without the aid of ad valorem taxation, expenditures for operating expenses, replacements and extensions may be made from the income from the plant for the fiscal year without an appropriation having been made therefor."

And it was held there as follows:

"The operation by a municipality of a

municipally owned water plant, under the provisions of the Constitution, may be as a private enterprise not controlled by the general taxation statutes, or it may be as a part of the current expense of the municipality controlled by the general taxation statutes. . . .

"Where the water plant is operated separate and apart from the current expense fund of the municipality and without the aid of ad valorem taxation, expenditures for operating expenses, replacements, and extensions may be made from the income from the plant for the fiscal year without an appropriation having been made therefor."

The language and rule quoted from the Bliss Case were prompted by the provisions of section 6, art. 18, of the Constitution, authorizing municipalities to engage in any business or enterprise which may be engaged in by anyone by virtue of any municipal franchise.

However, in Zachary v. City of Wagoner, 146 Okla. 268, 292 P. 345, it was held that the city commissioners, without of appropriation, or without the assent of the voters as provided in section 26, art. 10, supra, or without a bond issue voted as provided by said section 27, art. 10, could not contract a debt extending over a period of more than a year for electric power plant equipment to be paid out of the savings resulting therefrom over the old equipment.

In the latter case the city had purchased new equipment for its light and power plant to replace the old, and agreed with the seller to pay for the same over a period of 52 to 120 months exclusively from the savings occasioned by reason of the replacement. Certain citizens sought to enjoin the contract as a violation of the debt restrictions provided in said sections 26 and 27, art. 10. The trial court sustained a general demurrer to the petition, and on appeal this court reversed the judgment with directions to overrule the demurrer, and held that the arrangement created "an indebtedness under the Constitution and laws of Oklahoma, which is void unless the incurring thereof has received the assent of a majority of the qualified property taxpaying voters of such city voting at an election held for that purpose." And the court held further, as follows :

"The provisions of sections 26 and 27, article 10, of the Constitution apply without regard to the source from which the funds pledged to the payment of the indebtedness incurred are to be obtained.

"The fact that an indebtedness incurred by a municipality is to be paid only from some source other than ad valorem taxation does not render inoperative the limitation contained in section 26, article 10, of the Constitution, or extend the grant of authority contained in section 27, article 10, of the Constitution.

"Section 27, article 10, of the Constitution prescribes the m a n n e r and means municipalities must follow and comply with to exercise the power granted them by section 6, article 18, of the Constitution, and such manner and means is exclusive."

In the body of the opinion the court quoted from the Bliss Case, supra, as follows:

"This court, in Protest of Bliss, supra, said: 'The intention and plain effect of the provisions contained in sections 26 and 27, article 10, of the Constitution is to require municipalities to carry on their operations upon the cash or pay-as-you-go plan. The revenues of each year must take care of the expenses of each year; and any liability sought to be incurred by contract, expressed or implied, executed or executory, in excess of such current revenue, on hand or legally levied, is void, unless it be authorized by a vote of the people, and within the limitation therein required.'"

And, continuing, the court said:

"That rule is applicable here. The municipal officers of the city of Wagoner are without authority of law to contract indebtedness which is to be a charge against that municipality or any of its funds or property after the expiration of the fiscal year in which the contract is made, without the assent of the voters thereof, and the fact that the indebtedness is contracted for public utility purposes does not change the rule. If they could create a charge against the light plant profits for longer

than the current year, they could do so for a hundred years. They have no such authority under our law."

In considering the holding in the Bliss Case and the Zachary Case, it appears that a city may operate its own utility as a private enterprise not controlled by the general taxation statutes, or it may operate the same under annual appropriations based upon estimates of current expense to be financed by taxation (68 O. S. 1941 §286). But, in any event, the surplus or balance on hand at the end of the fiscal year must be considered as a resource in determining the amount of money to be raised by ad valorem taxation.

The facts in Zachary v. City of Wagoner, supra, seem so nearly parallel with the facts in this case that the decision there should control here. According to the record, the construction of the additional water facilities in question, so far as the work and labor were concerned, cost the city nothing in the way of revenue derived from ad valorem taxation. Those items could in no way become a charge upon the city's funds or property (Zachary Case, supra) other than a demand for water supply. Of course, a contract to furnish water does not constitute a debt within the meaning of the statutes pertaining to the fiscal affairs of the municipality; water contracted to be furnished but yet unused at the end of each fiscal year could in no way, of itself alone, affect the annual estimates necessary for governmental appropriations to be raised by ad valorem taxation.

And the latter circumstance furnishes the principal, if not the only, mark of distinction between this and the Zachary Case. Here, the contractual obligation due the State was to be paid, not in money, but in water, the property of the city. The claim of the State was, in a sense, a charge against the city's property extending beyond the fiscal year, but, standing alone, it was not a pecuniary charge as was the condition in the Bliss and Zachary Cases, above. In the two last cited cases the contracts created a charge against the city's revenues which constituted resources existing at the close of the fiscal year which, under the law, must be employed to reduce the estimated needs for the ensuing year. Section 286, supra; see Protest of Reid, 160 Okla. 3, 15 P. 2d 995.

But the above distinction is not sufficient to remove the present contracts from the operation of sections 26 and 27, art. 10, supra, and said section 286.

The record reveals that the finances of the city were pledged far beyond the current fiscal year for the purpose of supplying water to the penitentiary. Those finances were in the form of future expenses in furnishing the water. Under the first contract those expenses were placed entirely on the city; under the second, all expense was to be on the city except a portion of the electric current employed in operating the power. Whether the expense of the plant was borne by its own revenues or by taxation is immaterial. The funds necessary to such operation were pledged far beyond the fiscal year, funds not yet in existence, and the contracts were void. A liability was thereby sought to be incurred by contract in excess of the current revenue on hand, or legally levied, and was not authorized by a vote of the people. If the city commissioners could create a charge against the utility for longer than the current year, as said in the Zachary Case, "they could do so for a hundred years. They have no such authority under our law."

The judgment is reversed and the cause remanded for further proceedings not inconsistent with views herein expressed.

OSBORN, BAYLESS, WELCH, and DAVISON, JJ., concur. CORN, C.J., and RILEY, HURST, and ARNOLD, JJ., dissent.