WILLOW WIND, INC.; and Willow
Wind Inc., and Beaver Investment
Co., Joint Venturers, Appellants,

Tinker Investment & Mortgage Corp.,
Cross–Appellant.

v.

CITY OF MIDWEST CITY, Appellee
and Cross–Appellant,

Jimmy C. Isaac; M.S.P. Corp., Isaac Con-
struction Co., Inc.; Tinker Investment
& Mortgage Corp; and Beaver Invest-
ment Co.; Appellees.

Nos. 68805, 68834.

Supreme Court of Oklahoma.

Dec. 26, 1989.

Byrne A. Bowman, Oklahoma City, for appellants, Willow Wind and Beaver Inv. Co.

Robert Sheets, McFall McVay Sheet Lovelace & Juras, Oklahoma City, for appellant, Tinker Inv. and Mortg. Corp.

David A. Davis, Oklahoma City, John Vincent, Midwest City, for City of Midwest City.

ALMA WILSON, Justice:

In 1982, the City of Midwest City enacted ordinances providing for a method by which private developers could construct water and sewer lines, dedicate them to the city, and receive back a portion of the cost of the construction. The city would charge a one-time fee to subsequent developers to tie on to the line. After the fee was collected, the developer who originally laid the line would receive ninety percent of the tie-on fee, and the city would retain ten percent as an administrative charge. This arrangement was to continue over fifteen years. The city repealed the ordinances in 1986 on the grounds that they were unconstitutional after the private developers who had relied upon these ordinances had filed suit. Willow Wind, Inc., and Beaver Investment Company filed a declaratory judgment action and alternatively asked for a writ of mandamus. Tinker Investment & Mortgage Corp. filed an inverse condemnation/unjust enrichment suit for damages due to the loss of a valuable property right, that is to receive reimbursement for money it expended in the installation of its water and sewer line. The city moved for summary judgment in both cases and the trial court granted summary judgment to the city, finding that the ordinances were unconstitutional. The two cases were consolidated upon appeal. The Court of Appeals reversed and remanded for trial on the merits. This Court granted certiorari to consider whether the ordinances violated our state's constitution.

The City of Midwest City contends that the pay-back ordinances violated Article 10, §§ 14, 17, 26, and 27 of the Constitution of the State of Oklahoma. Those sections provide in pertinent part:

§ 14

Taxes shall be levied and collected by general laws, and for public purposes only....

§ 17

The Legislature shall not authorize any county or subdivision thereof, city, town, or incorporated district, to become a stockholder in any company, association, or corporation, or to obtain or appropriate money for, or levy any tax for, or to

loan its credit to any corporation, association, or individual.

### § 26

Except as herein otherwise provided, no county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose. . . .

### § 27

Any incorporated city or town in this State may, by a majority of the qualified property tax paying voters of such city or town, voting at an election to be held for that purpose, be allowed to become indebted in a larger amount than that specified in section twenty-six, for the purpose of purchasing or constructing public utilities, or for repairing the same, to be owned exclusively by such city. . . .

The City of Midwest City argues that the assessment for which the pay-back ordinances provide is a tax, primarily for the benefit of the private contractors and therefore violates §§ 14 and 17; and also that the ordinances were not enacted pursuant to §§ 26 and 27, because no election was held. The appellants argue that the pay-back ordinances do not authorize a tax, but only authorize a fee to be charged for the use of the water and sewer line. They also argue that the pay-back scheme does not violate §§ 26 and 27 because the ordinances do not create a debt for the city. Therefore, this Court must first determine if the ordinances authorize a tax, and whether they create a debt against the city.

In this state a tax and a special assessment are distinguishable. "[A] special assessment is not a tax in its general meaning, but an enforced assessment for betterment to real property as benefited." *City of Lawton v. Morford*, 146 Okla. 222, 293

P. 1068, 1069 (1930). In the case of *Alley v. City of Muskogee*, 53 Okla. 230, 156 P. 315, 316 (1916), this Court held:

[L]ike general taxes, special assessments are enforced proportional contributions, imposed not at regularly recurring periods to provide a continuous revenue, but instead are levied only occasionally as required; they are imposed, not upon the general body of the citizens, but upon a limited class of persons who are interested in a local improvement, and who are assumed to be benefited by the improvement to the extent of the assessment; they are imposed and collected as an equivalent, actual or presumed, for the benefit, and to pay the cost of the improvement. Special assessments proceed upon the theory that when a local improvement enhances the value of neighboring property, it is reasonable and competent of the Legislature to provide that such property should pay for the improvement. In a general levy of taxes, a contribution is exacted in return for the general benefits of government; in special assessments, the contribution is exacted because the property of the taxpayer is considered by the Legislature to be benefited over and beyond the general benefit of the community.

■ In the case at bar, the City of Midwest City adopted its ordinances to finance water and sewer lines. These ordinances initially require the developer and/or owner to pay for the connection of the lines to those currently maintained by the city. Subsequent developers benefiting from these lines are required to make payments on a per lot and per acre basis. These assessments are used to reimburse the initial developers ninety percent of their costs, with ten percent retained by the city. Because the assessment is levied only occasionally, as subsequent developers connect lines to those already existing, these assessments must be categorized as special assessments and not taxes as the term is used in Article 10, § 14. Therefore, the ordinances do not violate that section of this state's constitution.[1]

---

1. The "special assessments" for which the ordinances provide can be further distinguished by

■ Such a conclusion does not resolve the issue because, although the ordinances do not violate § 14, we must examine whether they are in violation of § 17 which forbids the legislature from authorizing any city to appropriate money for the benefit of any corporation, association, or individual. Municipalities have no power to levy special assessments for public improvements unless a statute confers the power either expressly or by necessary implication. *American–First Nat. Bank of Oklahoma City v. Peterson,* 169 Okla. 588, 38 P.2d 957, 961 (1935). Therefore, if the legislature is precluded from authorizing a city to appropriate money for the benefit of a corporation, association, or individual, then a municipality is precluded from appropriating such funds.

■ *Lawrence v. Schellstede,* 348 P.2d 1078, 1080 (Okla.1960), holds that § 17 was adopted for the purpose of preventing the investment of public funds in private enterprises. In citing *Lawrence,* the case of *Sublett v. City of Tulsa,* 405 P.2d 185, 197 (Okla.1965), emphasizes that expenditures resulting in a public use or purpose are not prohibited by §§ 14 and 17 of Article 10. The ordinances before this Court providing for a refund of a portion of the cost of installing water and sewer lines cannot be categorized as an investment of public funds in individual contractors. The special assessments made against subsequent contractors are merely methods for each contractor to pay his fair share of the cost of installation of the lines. Moreover, the purpose of the installation is not a private purpose, but benefits whole neighborhoods which are provided with water and sewer service. Such a benefit is public. The ordinances do not violate § 17 of Article 10.

We must now address whether the ordinances create a debt of the type which would violate §§ 26 and 27 of Article 10 since there has not been an election held pursuant to those sections. Construction

of §§ 26 and 27, and a lengthy discussion of what constitutes a debt is found in *City of Lawton v. Morford,* 146 Okla. 222, 293 P. 1068 (1930). In that case the City of Lawton proposed to pave Gore Boulevard and to assess surrounding property to pay for the paving. The City of Lawton owned more than fifty percent of the property surrounding the street. The amount assessed against the city would have been $63,000, which was more than two-thirds the cost of the paving. The city did not have the funds on hand and the matter had not been submitted to the voters. The city proposed to pay for the assessment against itself by levying a general tax to be paid over a period of ten years, but without a vote on the tax. An injunction was granted against the city and this Court affirmed.

■ The opinion quoted *City of Ottumwa v. Water Supply Co.,* 119 F. 315, 59 L.R.A. 604 (8th Cir.1902), "A promise to pay a certain amount, with interest, within a fixed time, out of taxes taken from all the people, including those not benefited, would seem to most people to be a debt." *City of Lawton,* 293 P. at 1071. The *Lawton* case further commented that "a city creates an indebtedness when it borrows money to be paid, with interest, from taxes in the future, whether such taxes are formally levied at one time, covering that future, or yearly, to meet the payments when about to mature." *City of Lawton,* 293 P. at 1071. Sections 26 and 27 are for the protection of the public to ensure that government is limited to reasonable bounds in the amount of tax or payment to be exacted for maintenance of government. *City of Lawton,* 293 P. at 1071.

■ Unlike *City of Lawton,* the ordinances in the case at bar provide no promise to pay a certain amount; the amount paid is to be taken from those who directly benefit from the water and sewer lines; and there is no guarantee that the initial

---

the fact that they are not involuntary assessments. In Ordinance No. 1818, § 37–188 provides that subsequent developers or owners shall file a petition for annexation prior to connecting to the sanitary sewer system. In Ordinance No. 1820, § 37–84, it is the responsibility

of subsequent developers to connect to the water service system. Again, as there is no requirement to build in an area, the assessment which can be determined in advance, is in that sense voluntary.

developers will be paid anything. The ordinances provide in pertinent part:

### ORDINANCE NO. 1818

Sec. 37–189.   Method of Financing Facilities.

*Service Lines*—The cost of service lines shall be paid for by the developer and/or owner.

*Lateral Lines*—The cost of lateral lines shall be paid for by the developer and/or owner.

*Trunk Lines*—The cost of extending existing trunk lines or construction of new trunk lines shall be borne by the developers and/or owners.

The cost shall be apportioned on the basis of an equal payment per acre and per lot considering the total area served by the trunk line system. The cost for trunk lines shall be determined when the necessity arises for sewering pre-determined drainage areas. When the required expenditure is in excess of the amount which the developer and/or owner is obligated to pay for such sewer service on a per acre and per lot basis, the City agrees to refund to the developer and/or owner the excess cost as funds become available from assessments from other tracts in the area. The developer and/or owner shall be given credit against acreage and lot assessments for all sewer lines relating to his development which are considered trunk lines. If any lateral sewer connection is made to a trunk line, the developer shall pay a trunk line cost for such lots. Said payments will go into a special fund for trunk sewer improvements only. Said payments to be made to the City upon application for connection to existing City sewer lines. The unit costs are to be adjusted yearly on the basis as set out in this ordinance.

Sec. 37–193.   Administration.

b.   The City of Midwest City shall reimburse the developer the assessments collected from subsequent developers benefiting from said facilities for a period of fifteen (15) years or until the developer has been reimbursed 90% of his cost, whichever shall sooner occurr [sic].

c.   The City shall withhold an administrative fee of 10% to be debited from the account balance of each yearly payback date.

### ORDINANCE NO. 1820

Sec.   37–84.   *Developers' Responsibilities.*

Developers and large tract users shall install distribution lines at their own expense.   Any grid or distribution line installed under the provisions of this ordinance shall be subject to approval, inspection and final acceptance by the City of Midwest City.   When a developer and/or owners requires water service to a tract not adjacent to a portion of the grid system, which has already been installed, it shall be the responsibility of such developer and/or owner to extend the grid system to his tract.   Such extension shall be under the control and supervision of the City of Midwest City.   The developer and/or owner shall be given credit against acreage and lot assessments for all water lines relating to his development which are considered grid or supply lines.

Sec. 37–86.   *Payment When Area Revised.*

When any platted area is revised to increase the number of users, a payment as established by ordinance multiplied by the number of additional users shall be made before connecting to the water grid system.

Sec. 37–89.   *Administration.*

b.   The City of Midwest City shall reimburse the developer the assessments collected from subsequent developers benefiting from said facilities for a period of fifteen (15) years or until the developer has been reimbursed 90% of his cost, which ever shall sooner occurr [sic].

c.   The City shall withhold an administrative fee of 10% to be debited from the account balance of each yearly payback date.

Sections 37–193(b) and 37–89(b) are identically worded.   They clearly reveal that

the city's only obligation is reimbursement of ninety percent of any amount collected from subsequent developers, *if any*. The period of collection is limited to fifteen years whether or not *any* funds are collected. There is no amount certain owed by the city. Although such may be a debt in the sense of an obligation, it certainly is not a debt as contemplated by §§ 26 and 27 of Article 10. This arrangement does not obligate the taxpayers of Midwest City. If any collection is done, the city keeps ten percent as an administration fee, so that the city is reimbursed for its collection efforts.

The City of Midwest City cites *City of McAlester v. State*, 195 Okla. 1, 154 P.2d 579 (1945), to support their argument that the ordinances before us are violative of this state's Constitution. In the *City of McAlester* case, the State Board of Public Affairs entered into contracts with the City of McAlester in which the terms were that the State would furnish all work and labor necessary to construct an extension of the city water system in consideration for water furnished ·by the city at its expense over a period of years. The contracts specified the price per gallon to be credited against the cost of the work and labor until fully discharged. This Court found the contracts to be unconstitutional as violative of §§ 26 and 27 of Article 10. This Court held:

> The record reveals that the finances of the city were pledged far beyond the current fiscal year for the purpose of supplying water to the penitentiary. Those finances were in the form of future expenses in furnishing the water. Under the first contract those expenses were placed entirely on the city; under the second, all expense was to be on the city except a portion of the electric current employed in operating the power. Whether the expense of the plant was borne by its own revenues or by taxation is immaterial. The funds necessary to such operation were pledged far beyond the fiscal year, funds not yet in existence, and the contracts were void. A liability was thereby sought to be incurred by contract in excess of the cur-

rent revenue on hand, or legally levied, and was not authorized by a vote of the people.

*City of McAlester*, 154 P.2d at 582. This case can be distinguished from the case at bar because a certain amount was due to the state by the City of McAlester. That amount was $377,557.35, which was to be repaid through the contracts for water. In the case at bar, no amount is due by the City of Midwest City. There is no deficit financing.

A case which is closer to the one at bar is *City of Wewoka v. Billingsley*, 331 P.2d 949 (Okla.1958). The plaintiffs had constructed sewer lines, water lines, fire plugs and manholes. Under a contract executed by the city officials, these items were leased to the City of Wewoka. In consideration of this lease, the City of Wewoka agreed to furnish water for all residences constructed in the proposed additions to the city, and agreed to pay one-half of all revenue collected to the plaintiffs for the water supplied to the additions. This payment was to continue each month for ten years, or until the sums expended by the plaintiffs for the construction had been fully paid. The water/sewer system was to become the property of the city as soon as fully paid. The city ceased making the payments, claiming that the contract violated §§ 26 and 27 of Article 10 of the Constitution of Oklahoma. This Court held that the contract did not create a debt within the purview of those constitutional provisions. The Court reasoned:

> The contract does not obligate the City to expend any of its funds or revenue derived from ad valorem taxation or otherwise. It simply provides that out of collections of water rentals from residents in Brookhaven Addition, it shall set over and deliver to plaintiffs one-half thereof, monthly.

*City of Wewoka*, 331 P.2d at 953. The case reveals that the resolution of the issue before us rests upon whether or not any city fund or revenue is obligated. Although the contract in *City of Wewoka* called the agreement a lease agreement, once the costs of construction were paid

from the receipt of collections, the water/sewer system became the property of the city. The key was that the city was not obligated if it did not collect revenue from its sale of water. Neither is the City of Midwest City obligated unless it collects a tie-on fee from subsequent contractors. Because there is no deficit financing involved in the case at bar, it does not violate §§ 26 and 27 of Article 10.

The opinion of the Court of Appeals is VACATED. The trial court decision is REVERSED AND REMANDED for further proceedings on the merits.

HARGRAVE, C.J., and HODGES, LAVENDER, DOOLIN, KAUGER and SUMMERS, JJ., concur.

OPALA, Vice Chief Justice, dissenting:

"I would deny certiorari and leave the unpublished opinion by the Court of Appeals undisturbed."

SIMMS, J., dissents.