Dear Representative Covey,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. May a municipality or a municipal utility authority legally subsidize a privately owned ambulance service?
 2. May a municipality or a municipal utility authority impose a monthly fee on a utility customer's bill to subsidize a privately owned ambulance service?
¶ 1 You ask whether a municipality or a municipal utility authority may legally subsidize a privately owned ambulance service and whether that municipality or municipal utility authority may impose a monthly fee to subsidize the ambulance service. Your question stems from a situation where a municipality contracted with a privately owned company for ambulance service for the municipality's inhabitants for a set amount, part of which is considered a subsidy to operate the ambulance service. The term "subsidy" has been defined as, "a grant of funds or property from a government (as of the state or a municipal corporation) to a private person or company to assist in the establishment or support of an enterprise deemed advantageous to the public." Webster's Third New International Dictionary 2279 (3d ed. 1993). Under this definition, a subsidy involves an expenditure of public funds which is in the public interest. Thus, your question requires an analysis of the Oklahoma Constitution Article X, Sections 14, 15 and 17, regarding the expenditure of public funds for public purposes. We must also examine the law regarding the powers of municipalities and public trusts.
 Powers Of Municipalities
¶ 2 A municipality is defined at 11 O.S. 2001, § 1-102[11-1-102](5) as "any incorporated city or town[.]" Municipalities are divided into two categories: charter municipalities and non-charter municipalities.
¶ 3 A "charter municipality" is defined at Section 1-102(1) as "any municipality which has adopted a charter in accordance with the provisions of the Constitution and laws of Oklahoma and at the time of adoption of the charter had a population of two thousand (2,000) or more." The Oklahoma Constitution provides that a city with "more than two thousand inhabitants may frame a charter for its own government, consistent with and subject to the Constitution and laws of this State." Okla. Const. art.XVIII, § 3(a); 11 O.S. 2001, § 13-101[11-13-101]. A charter municipality "is accorded full power of local self-government, and as such the city has the power to enact and enforce ordinances to protect the public peace, order, health, morals and safety of its inhabitants." Moore v. City of Tulsa, 561 P.2d 961, 963
(Okla. 1977). The Oklahoma Supreme Court analogized a city's charter to a constitution, and stated that a charter supersedes the laws of the state regarding "merely municipal affairs." Cityof Tulsa v. Pub. Employees Relations Bd., 845 P.2d 872, 875
(Okla. 1990). Title 11 O.S. 2001, § 13-109[11-13-109] provides:
 Whenever a charter is in conflict with any law relating to municipalities in force at the time of the adoption and approval of the charter, the provisions of the charter shall prevail and shall operate as a repeal or suspension of the state law or laws to the extent of any conflict.
Id.
¶ 4 While municipal charter provisions serve as the law of the municipality and supersede conflicting statutes involving matters of municipal concern, charter provisions cannot contradict State constitutional provisions and will not prevail over those conflicting statutory provisions which concern a statewide public interest. Id.; Pub. Employees Relations Bd.,845 P.2d at 875.
¶ 5 The powers of a non-charter municipality are those which are set by the Oklahoma Municipal Code. Morehead v. Dyer,518 P.2d 1105, 1107 (Okla. 1973). Such municipalities may enact ordinances to do that which is necessary for the operation of government. 11 O.S. 2001, § 14-101[11-14-101]. Section 14-101 provides that, "[t]he municipal governing body may enact ordinances, rules and regulations not inconsistent with the Constitution and laws of Oklahoma for any purpose mentioned in Title 11 of the Oklahoma Statutes or for carrying out their municipal functions." The Oklahoma Supreme Court discussed the powers of municipalities inDevelopment Industries, Inc. v. City of Norman, 412 P.2d 953,956 (Okla. 1966) when it stated:
 A municipal corporation possesses and can exercise only those powers granted in express words, those necessarily or fairly implied or incidental to the powers expressly granted, and those essential to the declared objects and purposes of the corporation.
Id.
¶ 6 The Legislature has specifically provided that the governing body of any municipality may contract for ambulance services with any "person, firm, or corporation." 11 O.S. 2001,§ 23-105[11-23-105](A). Section 23-105 in pertinent part provides:
 A. The governing body of any municipality or county may contract for ambulance service with the state or any of its agencies or any other municipality, county, person, firm, or corporation or combination thereof subject to such terms and conditions as may be agreed upon between the parties or in accordance with the requirements of the Interlocal Cooperation Act.
Id. (footnote omitted). General provisions also exist in Title 11 which grant municipalities the authority to "[m]ake all contracts and do all other acts in relation to the property and affairs of the municipality, necessary to the good government of the municipality. . . ." 11 O.S. 2001, § 22-101[11-22-101](4). Thus, municipalities have statutory authority to enter into contracts for ambulance services. This Opinion will address municipalities in general, and will not address the peculiarities of individual municipal charters.
 Powers Of Public Trusts
¶ 7 You ask not only about the power of a municipality but also about a municipal utility authority. A municipal utility authority in the situation you reference is a public trust with the municipality as the beneficiary, which is organized to provide utility services to a municipality. Thus, a general overview of public trusts is appropriate.
¶ 8 The creation of public trusts is authorized by the statutes governing trusts. 60 O.S. 2001 Supp. 2003, §§ 176-180.4.
These statutes provide for creating trusts having the state, counties or municipalities as beneficiaries. 60 O.S. Supp. 2003,§ 176[60-176](A).[1] A trust may be created to perform "any authorized and proper public function or purpose" of the beneficiary for whom the trust was created. "Trusts for the benefit of the public may be established with a broad field of objectives as long as the objectives encompass a benefit to a large class of the public or lessen the burdens of government."Shotts v. Hugh, 551 P.2d 252, 254 (Okla. 1976); see Bd. ofCounty Comm'rs v. Warram, 285 P.2d 1034, 1041-42 (Okla. 1955). Under this authority, if a municipality has the power to contract for ambulance services, a trust with the municipality as the beneficiary may generally be authorized to do likewise.The trust, however, is bound by the terms of the instrument which created it. The trust indenture is a contract between the settlor of the trust and the municipality, and it is this instrument which controls the powers and abilities of the trust. Section 177.1 of Title 60 provides as follows:
 That no public trust shall engage in any activity or transaction that is not expressly authorized in the instruments or articles prescribing its creation except by express consent of the governmental agency or governmental entity that created such public trust.
Id. The Oklahoma Supreme Court considered the introductory clause of this provision in Shipp v. Southeastern OklahomaIndustries Authority, 498 P.2d 1395, 1399-1400 (Okla. 1972) and determined that "[i]f engaging in the general kind of activity or transaction in question may reasonably be said to be included in the authority expressly conferred on the trust or the trustees in the instruments creating a public trust, such activity or transaction is expressly authorized in the instrument. . . ." Id. at 1400.
¶ 9 The introductory clause in Section 177.1 is followed by the exception, "except by express consent of the governmental agency or government entity that created such public trust." The statute does not specify how the consent is to be manifested, nor does it specify when the consent is to be given, i.e., before or after the unauthorized act has been performed. See id. For purposes of this Opinion, whether consent has been given and whether the terms of that consent are sufficient to authorize contracting for ambulance services are questions of fact which we will not address. See 74 O.S. 2001, § 18b[74-18b](A)(5) (Attorney General Opinions address questions of law rather than questions of fact). It is sufficient to note that while there is no general prohibition against a public trust with a municipality as the beneficiary contracting for ambulance services, a trust may engage only in activity which is expressly authorized in the trust instrument, or by express consent of the governmental agency that created the trust.
 Constitutional Provisions Regarding The Expenditure Of Public Funds
¶ 10 We have established that a municipality or, if properly authorized, a municipal utility authority, may contract for ambulance services. Whether such a contract may include an amount to subsidize a privately owned ambulance service involves an analysis of Oklahoma Constitutional provisions regarding the expenditure of public funds. Oklahoma Constitution Article X, Section 14 provides that, with certain exceptions, taxes are to be levied and collected for public purposes only. Section 15 of Article X applies to the State and prohibits giving, pledging or loaning the credit of the State to "any individual, company, corporation, or association, municipality, or political subdivision of the State." That constitutional provision in pertinent part states:
 A. [T]he credit of the State shall not be given, pledged, or loaned to any individual, company, corporation, or association, municipality, or political subdivision of the State, nor shall the State become an owner or stockholder in, nor make donation by gift, subscription to stock, by tax, or otherwise, to any company, association, or corporation.
Id.
¶ 11 Article X, Section 17 of the Oklahoma Constitution applies to municipalities and prohibits a city from appropriating money for any corporation, association or individual. That section provides:
 The Legislature shall not authorize any county or subdivision thereof, city, town, or incorporated district, to become a stockholder in any company, association, or corporation, or to obtain or appropriate money for, or levy any tax for, or to loan its credit to any corporation, association, or individual.
Id.
¶ 12 Section 17 has been labeled as "the version of Art. 10 § 15 that applies to municipalities." In re Univ. Hosp. Auth.,953 P.2d 314, 320 (Okla. 1997). Thus, decisions interpreting Section 15 as it applies to the State generally apply to Section 17 governing municipalities.
¶ 13 Section 17 is "a limitation, and not a grant of power, and was adopted for the purpose of preventing the investment of public funds in private enterprises." Lawrence v. Schellstede,348 P.2d 1078, 1082 (Okla. 1960); see also State ex rel. Brownv. City of Warr Acres, 946 P.2d 1140, 1144 (Okla. 1997) (quoting Lawrence, at 1082). Expenditures resulting in a public use or purpose are not prohibited by Okla. Const. art. X, § 17.Willow Wind, Inc. v. City of Midwest City, 790 P.2d 1067,1070 (Okla. 1989). Thus, to answer your question we look to whether providing public funds to subsidize the operation of a privately owned ambulance service constitutes a public purpose.
¶ 14 In Way v. Grand Lake Association, Inc., 635 P.2d 1010
(Okla. 1981), the Oklahoma Supreme Court analyzed the term "public purpose" and stated:
 (T)he term `public purposes' as used in section 14, Art. 10 is not to be construed in a narrow and restricted sense. . . . [I]t is stated that the term `public purpose' as used in constitutional provisions that taxes shall be levied for public purposes only, is synonymous with `governmental purposes,' and means a purpose affecting the inhabitants of the state or taxing district as a community, and not merely as individuals.
Id. at 1015 (quoting Bd. of Comm'rs v. Shaw,182 P.2d 507, 515 (Okla. 1947)). The court emphasized that to qualify as a public purpose, it is not necessary that the benefits from the fund be spread equally over the whole community or a large portion thereof. "A use may be public although it is of benefit primarily to the inhabitants of a small and restricted locality."Id. at 1016. The court analyzed Section 17 in a number of decisions and applied a broad construction to the term "public purpose."
¶ 15 The question in Willow Wind was whether an ordinance that required developers to pay costs of connecting sewer and water lines to existing city lines, with subsequent developers making payments on a per lot and per acre basis to reimburse the initial developers, violated the constitutional prohibition on taxation for other than public purposes (Article X, Section 14), and the constitutional prohibition on appropriation of monies for corporations, associations or individuals (Article X, Section 17). Willow Wind, 790 P.2d at 1068. The court noted that the ordinances did not violate Section 17 for two reasons. First, the ordinances providing for a refund could not be categorized as investments as they were "merely methods for each contractor to pay his fair share of the cost of installation of the lines."Id. at 1070. Second, the purpose of the installation was not a private purpose because it benefitted "whole neighborhoods which [were] provided with water and sewer service." Id.
¶ 16 In Brown, 946 P.2d at 1145, the court found that the proposed economic development plan "would promote a legitimate public purpose by increasing sales tax revenues for the City of Warr Acres, adding new jobs, retaining existing jobs, and promoting collateral economic growth and development." The court stated:
 The essential question presented to this Court, as well as to the trial court, is not whether the details of the plan match those in Burkhardt, but rather whether the plan served a legitimate public purpose. It is not for the courts to second guess the wisdom of the City Council in agreeing to the details of the plan. This Court need not agree that it was the best arrangement or even a good arrangement. If the economic development plan served a legitimate public purpose of promoting the general welfare, economic security, and prosperity of the City of Warr Acres and its citizens, then it withstands constitutional challenge.
Id. The Court of Civil Appeals conducted the same analysis inRural Water District No. 3 v. Antlers Public Works Authority,866 P.2d 458, 461 (Okla.Ct.App. 1993) and found a sufficient public purpose inherent in the nature of a rural water district and the "salutary purposes it serves."
¶ 17 The court also considered the consideration given in exchange for the public benefit in determining whether the expenditure was for a public purpose. In Burkhardt v. City ofEnid, 771 P.2d 608, 611 (Okla. 1989), the court found that public benefits in the form of economic development constituted consideration to the city. In that case, the city of Enid, through a public trust, purchased the Phillips University campus and leased it back to the university. Id. The appellants claimed that because the lease was below the market value for commercial property in Enid there was inadequate consideration, and the transaction should be viewed as a gift or a loan. Id.
The court found this argument "ignore[d] the public benefits to the community of Enid and the obligations Phillips assumed in the transaction." Id. The court noted that consideration "may be measured by benefit to one party or by forbearance, detriment, loss or responsibility assumed by the other party." Id.
¶ 18 When viewing consideration as a factor, the court measured consideration in a variety of ways. In Burkhardt,771 P.2d at 611, the consideration was the public benefit flowing to the City of Enid, and the obligations assumed by Phillips University. In University Hospitals, 953 P.2d at 320, the court, referencing Burkhardt, found it was bound by "the Legislature's express finding that benefits will accrue to Oklahoma citizens as a result of leasing the operations of the University Hospitals to a private organization." In Brown, 946 P.2d at 1144, the court noted that "[t]he City received adequate consideration under the plan by which Warr Acre's [sic] best commercial tract was developed by the country's largest retailer." Id.
¶ 19 Therefore, factors you mention in your letter such as the lack of interest by other ambulance services in your area and the rising costs of health care are relevant to a determination of whether the funds were being expended for a public purpose.
¶ 20 In addition to whether funds are being expended for a public purpose, the Way decision also requires a review of the safeguards established to ensure the proper use of the public funds. Way, 635 P.2d at 1015. In Way, the court was asked to review the legitimacy of claims for payments rendered under a legislative promulgation authorizing the use and expenditure of public funds to reimburse private entities for their activities in promoting tourism in Oklahoma. Id. at 1012. The court determined the legislation was valid. Id. at 1018. The court found that the legislation at issue contained adequate detailed conditions, safeguards and controls to assure the proper use of the funds in question. Id.
¶ 21 In the situation you reference, for a subsidy to a privately owned ambulance service to be a proper expenditure of public funds there must be adequate safeguards to assure the proper use of the funds. These safeguards may be established in the contracting instrument. Safeguards may also be provided in part by mandatory compliance with the Municipal Budget Act, 11O.S. 2001 Supp. 2003, §§ 17-201 through 17-216. Municipalities must also follow the provisions of 11 O.S. 2001, §§ 17-101[11-17-101]
through 17-114 regarding municipal financing. Whether such provisions are followed in a particular situation and whether adequate safeguards are established in a contract for ambulance services are questions of fact, which we cannot address in an Attorney General Opinion. 74 O.S. 2001, § 18b(A)(5).
¶ 22 In summary, it is generally understood that providing ambulance service constitutes a public purpose, as it provides necessary services to the people of a municipality. The Legislature, through enactment of various statutes regarding ambulance services, has expressed its intent that providing ambulance services constitutes a public purpose. See 19 O.S.2001, § 371[19-371](a) (authorizing the board of county commissioners to contract for ambulance services); 19 O.S. 2001, §§ 1201[19-1201] through 1221 (creating of the Rural Ambulance Service Districts Act). The people of Oklahoma have also recognized the public purpose of such services by providing for Emergency Medical Service Districts at Okla. Const. art. X, § 9C(a). Thus, the funds in your question would most likely be expended for a public purpose and the subsidy most likely would not run afoul of Okla. Const. art. X, § 17. We cannot speak to whether the subsidy in question meets the requirement of law required by Way, that adequate safeguards for the expenditure of the public money exist, as that is a factual question which cannot be answered in an Attorney General Opinion. 74 O.S. 2001, § 18b(a)(5).
 Charging Fees To Utility Customers For Ambulance Services
¶ 23 You next ask whether a municipality or municipal utility authority may impose a monthly fee on a utility customer's bill for providing a "subsidy" to a privately owned ambulance service. As discussed above, the powers of a municipal utility authority organized as a public trust are governed by the instrument creating the trust. As to municipalities, we reiterate that municipalities may enact ordinances consistent with the Constitution and Oklahoma law. 11 O.S. 2001, § 14-101[11-14-101]. We also note the Oklahoma Constitution provides that, "[e]very municipal corporation within this State shall have the right to engage in any business or enterprise which may be engaged in by a person, firm, or corporation by virtue of a franchise from said corporation." Okla. Const. art. 18, § 6.
¶ 24 We have established that the Legislature has given municipalities generally the power to contract for ambulance services. 11 O.S. 2001, § 23-105[11-23-105](A). Taking these statutory and constitutional provisions together, it appears that, assuming the funds are being expended for a public purpose, municipalities have the power to adopt ordinances to charge fees to pay for the contractual obligations to provide those services.[2]
¶ 25 The Oklahoma Supreme Court in Sharp v. Hall,181 P.2d 972, 973 (Okla. 1947), considered whether a municipality could properly charge fees to its inhabitants for the use of public sewers managed and operated by the municipality. The court found there was "nothing inequitable in making such charge to the person liable for the charge for water service, whether he be landowner or tenant." Id. at 975. The court stated, "[T]he city could make a charge for the use of the municipal sewer system under the authority granted by the constitution where the same was not arbitrary, discriminatory or unreasonable. . . ." Id.;see also Chastain v. Okla. City, 258 P.2d 635, 637-38 (Okla. 1953) (holding an ordinance imposing a sewer service charge upon the users of the city sewage disposal systems did not violate the Constitution). The same is true for expenses owed by the city as part of a contractual obligation for ambulance services. The services are for the use of the inhabitants, and as long as the fees are not arbitrary, discriminatory or unreasonable, we can find no prohibition against a municipality enacting an ordinance or providing in a charter that a municipality may impose a monthly fee on a utility customer's bill for those services.
¶ 26 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. Municipalities may be either charter or non-charter municipalities. 11 O.S. 2001, § 13-101[11-13-101]; 11 O.S. 2001, § 14-101. Charter municipalities may frame a charter for their own government consistent with the Oklahoma Constitution and Oklahoma statutory law. Okla. Const. art. XVIII, § 3(a); 11 O.S. 2001, § 13-101. Non-charter cities may enact ordinances consistent the Oklahoma Constitution and the provisions of 11 O.S. 2001, § 14-101[11-14-101].
 2. Municipalities are prohibited by Okla. Const. art. X, § 17 from investing public funds in private enterprise. Lawrence v. Schellstede, 348 P.2d 1078, 1082 (Okla. 1960). Expenditures resulting in a public use or purpose are not gifts and are not prohibited by Okla. Const. art. X, § 17.
 3. The Legislature specifically provided that a municipality may contract with a private entity to provide ambulance service. 11 O.S. 2001, § 23-105. Providing ambulance services is generally understood to be a public purpose. The term "public purpose" is to be construed broadly and generally means "a purpose affecting the inhabitants of the state or taxing district as a community, and not merely as individuals." Way v. Grand Lake Ass'n, 635 P.2d 1010, 1015 (Okla. 1981). Whether the terms of a contract which includes a subsidy to a privatelyowned ambulance service are such that the expenditure is for a public purpose, or whether the payment constitutes a gift, is a question of fact which cannot be answered in an Attorney General Opinion. 74 O.S. 2001, § 18b(A)(5).
 4. A public trust such as a municipal utility authority may be created to perform the same function as the beneficiary for whom it is created. 60 O.S. Supp. 2003, § 176(A)(1). However, a trust has only those specific powers granted by the instrument creating the trust or those to which the government agency creating the trust has expressly consented. 60 O.S. 2001, § 177.1. Therefore, it is a question of fact whether a municipal utility authority organized as a public trust may subsidize an ambulance service. 74 O.S. 2001, § 18b(A)(5).
 5. Assuming that subsidizing an ambulance service is a public purpose and provisions for charging fees on customers' utility bills are contained within the municipality's charter or ordinances, a municipality may charge a fee to its customers to subsidize an ambulance service. Sharp v. Hall, 181 P.2d 972, 974 (Okla. 1947).
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 SANDRA D. RINEHART Senior Assistant Attorney General
[1] See 2004 Okla. Sess. Law Serv. ch. 5, §§ 48, 49 (several amendments were made to Section 176 in the 2004 Second Regular Session of the Forty-Ninth Legislature; however, they are not germane here).
[2] Fees are not the only method by which funds may be collected for ambulance services. A municipality also has the authority to assess taxes. Oklahoma statutes provide that "[a]ny incorporated city or town in this state is hereby authorized to assess, levy, and collect taxes for general and special purposes of municipal government as the Legislature may levy and collect for purposes of state government except ad valorem property taxes." 68 O.S. Supp. 2003, § 2701[68-2701](A).